FíreemaN, J.,
delivered the opinion of the court..
These bills, cross-bills, supplemental bills and injunction bills present a complicated mass of pleadings better calculated to obscure and render uncertain the points intended to be presented to the court for decision, than anything that has fallen to our lot to examine since we have been on this bench. We have endeavored by careful- examination of pleadings and evidence, and by the assistance of able briefs of the counsel on both sides, to arrive at the real issues presented, and while we may well doubt whether the-questions debated by counsel could be fairly presented on strict application of the rules of law to these pleadings, yet in view of the peculiar circumstances of the case we deem it our duty to settle, if possible, the conflicting claims of the parties as far as it can be done, that this vexatious litigation may cease.
It is conceded by counsel for Eliza King, that the descent of the land is not correctly stated in the original bill, but that the facts are as stated in Riley’s-answer to the original bill, and the subsequent pleadings.
In order to arrive at the real questions presented for our descision in this case, we can only look to the allegations contained in the pleadings found in the record, for these make the case before us, not the proof as contained in the depositions, except so far as such depositions contain matter in the pleadings alleged.
*677 The first bill was filed by Elizabeth King and others, as heirs of William Eowan, deceased, in November, 1858. We need not give in detail the recital of the various bills, but only refer to them to see if the questions urged in the briefs are fairly raised by their allegations. It may be laid down as an axiom that “ Allegations without proof, or proof without allegations, can never be the foundation of a decree.” 5 Minn., 216; Kerr on Frauds, 383.
The first proposition, on which the title of ;Elizabeth King is maintained and asserted to the whole of the land in controversy, to-wit: the one hundred and twenty-five acres, is, that she has title under a descent cast and statute of limitations.
In the language of the court, in the case of Hubbard and Wood v. Wood’s lessee, 1 Sneed 285, “we take it to be too clear to admit of any discussion that title by descent is an ‘assurance’ of title within the meaning of the act of 1819.” It may be conceded, as held in the above case, that “the seizin and possession, are as well of every part, as of the whole tract, that the title of each tenant, is a title extending to the whole tract, and that it follows — both the title and possession being entire — that the statute of limitations (when applicable) would operate to vest a tenant in common holding such possession, with an absolute and indefeasible title to the whole tract of land, by virtue of sec. 1, Act 1819.” Ib., 185.
It is equally sound law perhaps, “that an ' exclusive, adverse possession of the whole tract of land, or exclusive receipt of the rents and profits, no demand *678 being made by the other tenant, or if made refused, and his title denied, may be evidence of disseizin or actual ouster.” lb. 286. We would hold, if the attitude of the complainants justified, that this is a very proper case for the application of the above princf-' pies, but the question is, can we do so from the al-j legations and charges which the complainant Elizabeth King, and the other complainants, but especially Mrs. King, have made in their bills, as well as other facts in the case? "While we might feel an inclination to extend a most liberal application of the rules of • law to an ignorant and wronged party, yet we cannot bend these rules a hair’s breadth from the line of perfect rectitude, consciously, in order to meet such cases. 1
We turn to the original bill filed by Eliza King et al v. Wiley and William A. Rowan, and find the following allegations: “Your complainants have all been either in the actual or constructive possession of all of said tract of land down to a very short period, as will be more specifically shown- hereafter.” Again, after stating the fact that the land had been sold for taxes, and bid off at the instance of complainants — by their attorney J. B. Heiskell — which the bill alleges “ he proceeded to do, and bid off the land for the benefit of all the heirs of the said William Rowan, deceased.” The bill then alleges that William A. Rowan had lived upon a considerable portion of said land, for between two and three years, and received the rents and profits of a much greater portion of said tract of land than he was entitled to- *679 by his pretended purchase from his father Samuel Rowan, etc., and that the “complainants, Blessing and wife and Lawson and wife, had entrusted the management of the farm entirely to your complainants Elizabeth King and William A. Rowan, and the same allegation is made as to the interest of William Rowan and Elizabeth Rowan, that they had entrusted their interest and its management to said Eliza King and William A. Rowan,” and that in keeping it free from ineumbrances and in the management of the land “they acted as agents of complainants, being all tenants in common.” It is even further alleged “that said Eliza King and defendant William A. Rowan went and paid to said Heiskell the amount of his bid upon said land, acting still for the benefit of all the tenants in common.” We need not add further quotations from this bill, as it is, the whole theory is in accordance with the above quoted allegations, and its prayer in conformity with them, that the land either be. sold in order to partition among the parties entitled, or if more to advantage of parties, be divided.
It is evident from these allegations that no exclusive right to the one hundred and twenty-five acre tract could be established in Eliza King, unless we should hold that a complainant can recover in a Court of Chancery by disproving the allegations of the bill by which the case is stated to the Court.
In 1861, however complainant Eliza King and Eliza Rowan filed, what is entitled, on the first page of it in this record, an original and injunction bill, the prayer of which is that it be taken as an *680 amended and supplemental bill according to said bill for partition, and as an original bill, if need be.”
This bill is filed to enjoin an action at law of forcible entry and detainer, which it seems B,iley had commenced against Elizabeth King, and to prevent vexatious litigation growing out of said suit. There are various recitals in said bill, giving the history of the suit then pending by Hopkins’ heirs, with other matters not necessary to be here mentioned. She, however, claims to have occupied the part of the land recovered by Hopkins’ heirs, but that her claims extended to the entire tract, including the one hundred and twenty-five acres in dispute, and to have cultivated part of the one hundred and twenty-five acres from. 1853. She then adds a new and independent claim of title to the land, for the ■ first time made. The allegation is, “and while complainant-. Betsy King will insist upon her right to the entire tract of land upon her possession, as also upon the redemption by her of said land, which was sold by the sheriff of said county and bid off by said J. D. Itiley in a matter which will be explained upon the hearing, and to test the validity of which claims, this bill is filed in part.” The prayer of this supplemental bill is, that the court will adjudge upon the hearing complainants’ rights to said land respectively, and decree the land to said Betsy, or partition the same as may be just, etc.
This allegation, though very inartificially drawn, taken in connection with the other pleadings and history of the case, as found in the record, can only *681 mean that while she has heretofore claimed as tenant in common with the other heirs of Rowan, deceased, yet, that pending the litigation between herself and Riley, she had obtained the title to the entire land by redemption from Riley, who had purchased it at execution sale during said litigation, and that she relied on said title as against Riley, and asked the •court to adjudicate and settle its validity.
In response to this allegation and claim, Riley answers, “that said land was also sold at execution sale, and respondent denies that she has ever redeemed it.” Respondent, he says, became the purchaser. Complainant made a tender of some money, but not an amount sufficient to pay the amount for which it was sold, with interest, and respondent is advised that if she had redeemed it she would have held it, not absolutely, but for the benefit of herself and the other parties who were interested with her as tenants in common.
A deed is in proof, unobjected to, from Elias Beel, sheriff of Hawkins county, and made on July 4, 1865, which recites that a sale was made Mnv —, 1861, and that Eliza King, on May 22, 1863, in her own right, and for her exclusive use and benefit, did redeem said land, by first tendering to the said John D. Riley the sum of $270.60, that being the amount due said Riley as principal and interest of his bid of $241.60 so bid by him at said sale, and the said John D. Riley having directed that said redemption money be paid to the Clerk of the Circu't Court, etc. It then goes on to recite that the money was paid to the. clerk, and a receipt of the clerk is sub *682 stantially copied, showing the fact, and thereupon the sheriff conveys her the land absolutely in fee simple. In addition to these recitals, Beel proves the fact of. the tender of the money for redemption of the land to Riley, and his refusal to receive the same, and that he then paid .the amount to the clerk, and executed the deed.
The only defenses set up against this redemption in the answer of Riley, are: 1. That the amount tendered was insufficient. 2. That Elizabeth King being tenant in common of the land, could not redeem and hold' exclusive of her co-tenants, but would hold the land or legal title as trustee for them.
As to the first question, it may be answered that a redemption of the land being alleged by the bill, and a tender admitted by the answer, the fact of a tender of the redemption money is proven by' Beel in his deposition, as well as in the recitals of the deed. Under these circumstances, it was clearly the duty of the party claiming its insufficiency to show that the fact was as claimed.
"We proceed to examine the second question. It was presented in the case of Tisdale v. Tisdale et als., 2 Sneed, 598-9, as to tenants in common by descent. In the opinion of Judge Wright, he says of the purchasing tenant in that case: “He was jointly interested in the land with complainant as tenants in common by descent, as such he will be regarded as acting for all in the removal of incumbrances, or perfecting the title, unless the contrary is clearly made to appear.” He lays down the general rule as broadly as the *683 authorities will warrant in cases of tenants in common by descent. He adds, however, that “ It may be different where they claim title by distinct purchases, even if the same original title.” 599. He then adds, on page 600, there may be exceptions, or to use his language, “There may be cases where one tenant in common may purchase in an outstanding title for his-own benefit, but this is not one of them.” The rule is laid down by Chancellor Kent, in Home v. Fender, 5 J. C. R., 388 and 407, in the same guarded and qualified terms as given by Judge Wright, where the Chancellor says, “I will not say, that one tenant in common, may not, in any case purchase in an outstanding title for his exclusive benefit,” but lays down the rule strongly against the right to do it. In case of two devisees in possession under an imperfect title from their common ancestor, he says, it would be immoral and inequitable to allow it in such case, and so it is said L. C. in Eq., 95, that one co-tenant shall not sweep away the title of the others, unless some special circumstances occur in the case. These authorities, while laying down the rule, to which, we assent, sufficiently indicate, and in fact clearly recognize it as subject to qualifications and exceptions; one of which is, where the opposite of a trust is made clearly to appear; the other, where the parties hold by purchase different titles, even though from a common source, or where special circumstances occur in the case. Without going into a detail of the evidence we think all, or enough at any rate, of these elements of exception occur in this case to bring it clearly and most *684 unquestionably within the exceptions to the general rule. It does clearly appear that Elizabeth King redeemed this land from Riley, or tendered the redemption money with a purpose contrary and antagonistic to all idea of a trust, and certainly in distinct and unequivocal antagonism to all and every claim on the part ■of Riley, with whom she was then engaged in a most bitter contest about the land, and by whom she had been cruelly wronged and maltreated, if not oppressed.
In the second place, Riley was a purchaser or assumed purchaser, and held by a distinct title from hers, which was by descent; and so the general rule did not have strict or proper application under the facts of this case; and lastly we may add, that peculiar •circumstances such as are required in the rule we have quoted, are abundant in this case, sufficient, if anything can, to take this from under the operation of the general rule. The land was in angry litigation between the parties; the advantage in the way of money and skill in management, was greatly in the favor of Riley, who shows himself the cunning, artful speculator from the whole proof, and eagerly seeking a profitable bargain. He had been active no doubt, in having the land sold for costs of suits then pending; had eagerly purchased it, intending no doubt, to fortify his doubtful title by the sheriffs deed under these sales at execution, not believing this old woman would ever be able to redeem it. She defeats this effort of his by the aid of friends, and now Riley claims, that there was no redemption, or if there was, she must be held as trustee for his benefit. In other *685 words, she must perish on one or the other horn of the dilemma. If he had been permitted to hold the legal title thus purchased, he could have set it up, or would no doubt have sought to do it to defeat her claims, but if she pays the money, and gets it from him, then she is to hold it for his benefit.
¥e need not elaborate the circumstances in this ease that add strength to this view. It suffices to say, that from what we see in this record, it would he very doubtful under a proper presentation of the question, whether any court of equity would have ever enforced Riley’s supposed titles, on the ground that they were hard and unconscionable bargains, such as would repel him from relief in a court of chancery. It is insisted however, that Mrs. King acquired no title by the sheriff’s deed and tender of the redemption money, and that there was no authority for deposit of the money with the clerk, as was done, Riley being in the county. This is certainly true, so far as the actual legal title is concerned-The tender having been refused, the sheriff had no authority to make the deed, consequently it conveyed no legal title to her; yet the tender did confer rights-on her. She as one of the parties against whom the execution was, under which the land was sold, had the right to redeem it, having tendered the money and the tender having been refused, she had a right to file her bill in equity and compel a redemption, and equity treating that as done, which ought to have been as to all rights, which would have grown out of the act had it been done, .will,. *686 as between her and Riley, place her in the precise position she would have occupied had she .redeemed from him, and obtained the title which he had. She mint then be treated, in this litigation, as standing precisely as Riley stood, with the sale and his purchase in his favor, and a right to call for the legal title. If the right to redeem had been perfected, she would have had Riley’s title under the purchase, and then the question is, could Riley have held the land under his purchase at the sheriff’s sale ? Undoubtedly he could, as the title was not by descent, nor under the same purchase, but by distinct purchase, though from parties holding or deriving title from a common source. In this view of the case, the complainant Elizabeth King, under her supplemental bill, asks, that her rights under this purchase may be adjudicated by this court, as between herself and Riley. She, as against him, under the facts of the case, is entitled to stand as if she had redeemed from him in May, 1863, when her tender was made. Since that time she has been claiming under said redemption, or at any rate, since the date of the deed July 4, 1865, said deed having been registered July 10, 1865, and thus giving public notice of her exclusive and adverse claim.
On looking at the answer of Riley, it may be fairly construed as admitting the redemption by Elizabeth King, if the tender was of enough money for the purpose,, that being the only objection he takes to it. But- he goes on to insist that, she made a tender of some money, but not an amount sufficient to pay *687 the amount for -which it was sold with interest, and then further says, “and respondent is advised that if she had redeemed it, she would have held it, not absolutely, but for the benefit of herself and the other parties who were interested with her as tenants in common.” He fails to defeat the redemption by showing a want of tender of sufficient money, and then the only other matter of defence to the redemption is, that she holds as tenant in common for him and others. In other words, that “you failed to redeem for want of a 'tender of sufficient money, if this is not so — your redemption complete — then you hold as such redeeming party as a matter of law, for your co-tenants.”
We are authorized, by the consent of the parties in' the final decree, to settle on the equities between the parties. In that decree, after consolidating all the causes pending, it is recited, “and the parties agreeing to waive all questions of jurisdiction, and agree for the court to settle all questions between the parties.” This, in connection with the prayer of the supplemental bill of Mrs. King, that the court should settle her right in the land on the redemption question, presents the whole case and rights of parties for our decision, and the above is the conclusion to which we have arrived after going through this tangled mass of unintelligible pleadings.
The result is, the decree of the Chancellor is affirmed with costs.