## ELBRIDGE HOWE *vs.* BENJAMIN S. HOWE.

Three sons took from their father a conveyance of all his estate, real and personal, consisting of a farm, farm-house, farming stock and household furniture, and promised, in consideration thereof, to pay his debts then existing and support him and his wife during their lives. One of them took from the others a power of attorney to hold and manage the property and fulfil their joint promise, and by virtue of this power paid his father's debts, supported his father and mother till they died, and carried on the farm, supposing that if it should yield a profit over these expenditures they should share it equally, but if otherwise, that they should equally share the loss. *Held*, that, if any partnership was created between them, it was, at most, in the profits and losses of carrying on the farm.

CONTRACT for one third of a balance due on an account for money paid by the plaintiff in settling, after March 29, 1864, debts contracted by Stephen Howe prior to that date; in supporting and taking care of said Stephen and his wife until the

death of each respectively; for their funeral expenses; and in the care and management of a farm in Marlborough from March 29, 1864, to April 24, 1865, the date of the writ.

At the trial in the superior court, before *Putnam*, J., it appeared that on March 29, 1864, Stephen Howe conveyed to his three sons, (the plaintiff, the defendant, and Nahum B. Howe,) by deeds of warranty and a bill of sale in the usual form, all his estate, which consisted chiefly of a farm and farm buildings which he had occupied as a homestead, and of the farming stock and household furniture. As part of the consideration for the conveyance, the sons agreed to pay his debts then outstanding, and to support him and his wife during their lives, and they made a mortgage back to him of the real estate to secure performance of this agreement. The plaintiff took from his brothers a power of attorney to hold and manage the farm and other property so conveyed to them, and perform the agreement in their behalf; and he testified that by virtue of this power he carried on the farm, and paid part of his father's debts, and supported his father and mother till they died, and incurred the expenses charged in the account sued upon, making reasonable charges for his own services, and supposing " that if as the result of the management there should be a profit, it should be shared between the three equally, and if a loss, it should be borne by the three equally; " that his receipts had not been sufficient to meet the payments necessary; and that he had supplied the deficiency from his private funds, doing so for the purpose of executing the power of attorney and fulfilling the condition of the mortgage. And he further testified that his brothers examined his accounts in December 1864, and about the 1st of April 1865, and expressed their approval of them, and made no objection to any item.

It further appeared that shortly after this second examination the defendant orally revoked the plaintiff's authority as his attorney under said power, and conveyed to a third person all his title and interest in the property; and that at the date of this writ there were outstanding, unpaid, several debts of Stephen Howe which existed on March 29, 1864, and a physician's bil

for attendance on said Stephen and his wife after March 29, 1864, and there were also on hand part of the farming utensils and all the furniture.

The defendant asked the judge to rule that he and his brothers were partners, and so that the plaintiff could not maintain the action; but he refused so to rule. A verdict was returned for the plaintiff; and the defendant alleged exceptions.

*E. M. Bigelow*, for the defendant.

*W. B. Gale*, for the plaintiff.

GRAY, J. By the conveyances from Stephen Howe to his sons, they became the owners of the real and personal property conveyed, as tenants in common; and by their contemporaneous agreement with and mortgage to him, they became jointly liable to pay his outstanding debts and to support him and his wife for life. There is no evidence that they ever agreed or intended to make this property partnership property, or this obligation a partnership obligation. If any partnership was ever created between them, (upon which we express no opinion,) it was, at most, in the profits and losses of carrying on the farm. Partnership in profits and losses does not necessarily imply partnership in the property out of which the profits and losses arise. Story on Part. §§ 27, 29, 56. *French* v. *Styring*, 2 C. B. (N. S.) 357. A partnership between sons in the family homestead, furniture, and other property connected with it, conveyed to them by their father, or in a promise by them to him to pay his debts and support him and his wife, is too novel and extraordinary to be inferred without clear proof. It does not appear that any stock or other property purchased since the original conveyance remains on hand. The farm, the household furniture, and so much of the farming utensils conveyed by the father to the sons as still existed after the death of the parents, remained, as they had been from the time of the conveyance, the common, not the partnership, property of the sons. The few unpaid debts contracted by the father before the conveyance, as well as the physician's bill for subsequent attendance on him and his wife, were not incurred in carrying on the partnership business, and would have been as binding upon the sons, by virtue of their original

agreement with their father, if no partnership had afterwards been entered into for carrying on the farm. There were there-fore no partnership affairs or accounts remaining unsettled when this action was brought, and the only objection taken to its maintenance fails. *Exceptions overruled.*