[L. A. No. 3170.   Department Two.—March 23, 1914.]

CYRUS F. McNUTT, as Trustee et al., Appellants, v. NUEVO LAND COMPANY (a Corporation), Respondent.

Trust in Mortgaged Property—Foreclosure of Mortgage—Right to Restoration of Trust.—Where real estate encumbered by mortgage is conveyed to a trustee to sell and apply the proceeds, first to the payment of the mortgage debt and expenses of the sale, and then to apportion the residue among three different creditors of the mortgagor whose claims are separate and independent of each other, and the mortgage is thereafter foreclosed, and the certificate of sale is acquired by the assignee of two of the three beneficiaries of the trust, the remaining beneficiary is not entitled to have the trust restored after the expiration of the time of redemption, by offering to pay the full redemption price, together with the amount due the other beneficiaries, since there is no privity or community of interest between such beneficiaries.

Id.—Termination of Trust by Foreclosure Sale.—The trust in such case, and the rights of the beneficiaries thereunder, necessarily terminated upon the foreclosure sale.

ID.—REDEMPTION BY BENEFICIARIES—STATUTORY NOT EQUITABLE RIGHT. The right of redemption open to such beneficiaries was not an equitable right which they might exercise at their pleasure years after the sale, but the statutory right declared in section 702 of the Code of Civil Procedure.

ID.—FORECLOSURE — EFFECT IN DIVESTING RIGHTS OF DEFENDANTS— RIGHT OF REDEMPTION.—The effect of the foreclosure sale in such case is of itself to extinguish the right and claim of all the defendants in the action acquired subsequent to the date of the mortgage, and to vest in the purchaser the title of the mortgagor at the date of the mortgage, discharged of all such right and claim. It is only when the judgment debtor redeems that the effect of the sale is terminated and he is restored to his estate. In other cases where one exercises the right of redemption when he is under no legal obligation so to do, as a junior lien claimant or a judgment creditor, his action is not in strictness a redemption but a purchase of the right and title acquired under the sale.

TENANCY IN COMMON—RIGHT OF COTENANT TO PURCHASE AT JUDICIAL SALE.—Unless some fraud can be shown to have been perpetrated, or some superior knowledge taken advantage of, a cotenant may purchase at an execution or a judicial sale the moiety of any of his companions in interest, and retain and assert the title thereby acquired as fully as though he were a stranger to the judgment defendant.

ID.—CONTRIBUTION BY COTENANT—EXERCISE OF RIGHT PROMPTLY.—An offer of contribution by a tenant in common to reimburse his cotenant who has purchased an outstanding title to the common property, must be made promptly; an offer made years after the acquisition of the title, and after the land has doubled or trebled in value, does not appeal to equity.

APPEAL from a judgment of the Superior Court of Riverside County and from an order refusing a new trial. F. E. Densmore, Judge.

The facts are stated in the opinion of the court.

Kenton A. Miller, W. W. Phelps, Smith, McNutt & Hannon, and Smith, Miller & Phelps, for Appellants.

Leonard & Surr, for Respondent.

HENSHAW, J.—Another action involving much of the law and many of the facts here presented was brought by these plaintiffs against the same defendants. To the complaint in

that action a general demurrer was sustained. An appeal was taken to this court which will be found reported in *Smith* v. *McNutt*, 156 Cal. 769, [106 Pac. 70]. For convenience, however, the facts may be briefly recapitulated. The Lake View Land Company owing a certain indebtedness to John Wolfskill, another independent indebtedness to L. P. Hansen, a third to the law firm of Smith, McNutt & Hannon for legal services, made to Mr. McNutt of that firm a deed absolute in form for one thousand acres of land. The deed, however, was upon certain trusts subsequently declared by McNutt in a declaration of trust which years thereafter was recorded. At the time of the conveyance of this land it was encumbered by a mortgage to the San Gabriel Valley Bank to secure the payment of the sum of five thousand dollars. The declaration of trust declared that McNutt held title to the land to sell it and upon sale, first, to pay the mortgage debt of the San Gabriel Valley Bank and the expenses of sale, next to pay to John Wolfskill ten dollars per acre, next to pay to L. P. Hansen ten dollars per acre, and the residue, if any, and in whatever amount, to be paid to Smith, McNutt & Hannon for their legal services. Default was made on the interest of the mortgage to the bank and the bank foreclosed. An appeal was taken, the judgment in foreclosure affirmed, and on April 3, 1907, the commissioner duly sold the mortgaged property, the bank becoming the purchaser for the sum of $7,806.31, the amount then due under the judgment. Prior to July 18, 1907, A. B. Miller (who, for the purposes of this consideration it may be conceded was acting as the agent of the defendant, the Nuevo Land Company), purchased the certificate of sale to the bank and all its rights therein and thereunder for the sum of $9,050. He also purchased the interests of Wolfskill and Hansen under the trust and other properties of theirs, all his purchases in these matters amounting to or exceeding ninety thousand dollars. All of these properties Miller in turn conveyed to the Nuevo Land Company of which he was a director. On the thirty-first day of October, 1907, McNutt wrote to the Land Company, offering to contribute "our (Smith, McNutt & Hannon's) just share of the money necessary to reimburse your company of its necessary outlay to relieve and release the said lands and the said water stock of said trust, from the lien and burden

of said mortgage and the sale made under the decree fore-
closing the same.'' The Nuevo Land Company answered re-
pudiating the idea that it had taken the certificate of sale
burdened with any trust or duty to Smith, McNutt & Hannon
or the other beneficiaries of the trust, and declaring that it had
purchased the land to hold and own as its sole property, and
it asserted an unqualified and unincumbered ownership upon
the expiration of the time allowed by law for redemption
should the redemption not be effected by the parties entitled
to redeem. This letter ·was received by. Smith, McNutt &
Hannon when the statutory period for redemption had yet
some months to run. They answered it, not by redemption,
but by an action by which they sought a restoration of the
trust in the land in their favor after having the court deter-
mine the just share which they should pay to reimburse the
Nuevo Land Company for its outlay. This was the action to
which the general demurrer was sustained and which is re-
ported in volume 156 of our reports. It may here be said that
the whole theory of that case, as well as that of the case at bar,
is this: That such relations of privity existed between the
beneficiaries of this trust as to make the acquisition of the
title conveyed under the foreclosure sale a title for the benefit
of all the beneficiaries if it was acquired by any one of them
or by any one acting under them; that Miller when he pur-
chased the beneficial interests of Wolfskill and Hansen be-
came substituted under the trust for them; that his acquisi-
tion of the title was therefore an acquisition for the trustee
McNutt for the benefit of all the beneficiaries, and that all
that the beneficiaries, or any of them, were required to do was
to tender their just share of the amount so expended by Miller;
that the Nuevo Land Company succeeded Miller to the title
and interests subject to the same duties and liabilities; that
the effect of the judgment in *Smith* v. *McNutt* in 156 Cal. was
but to declare that a beneficiary seeking to maintain his rights
in this respect must pay the full redemption price and not a
part of it; that upon the announcement of this decision they
brought the present action in which they offered to pay to the
Nuevo Land Company the full redemption price. Their first
efforts in this regard were made in January, 1910, long after
the statutory right of redemption had expired and it was a
written offer to pay nine thousand and fifty dollars with

legal interest, coupled with a demand that the land be conveyed to McNutt as trustee. This was followed by a second demand in which the offer to pay nine thousand and fifty dollars was accompanied by an additional offer to pay the indebtedness due under the trust to Wolfskill and Hansen, and still by a third offer to pay the nine thousand and fifty dollars and twenty thousand dollars with interest, being the amount due Wolfskill and Hansen, each of these offers being joined with a demand that the Nuevo Land Company make its deed of the property to McNutt as trustee. It is perhaps unnecessary, but still it is not improper, to add that between the time when the statutory equity of redemption had expired without action upon the part of these plaintiffs and the time when these offers were made in 1910 the land had greatly increased in value.

The court heard the evidence, made its findings adverse to plaintiffs, entered judgment accordingly, and plaintiffs have appealed from that judgment and from the order denying their motion for a new trial.

It is apparent from what has been said that the whole foundation of appellants' case rests upon its asserted identity with the case of a redemption by one of several joint owners or the acquisition of an outstanding title by one cotenant or tenant in common. (*Randall* v. *Duff*, 107 Cal. 35, [40 Pac. 20]; *Warner Bros.* v. *Freud*, 138 Cal. 651, [72 Pac. 345].) Not only is the law of this case against the assertion of such a right and against the existence of such equities under the relationship of these parties, but the general law has no application to conditions such as are presented here. Under the trust in the McNutt deed there was no community or privity of interest between the beneficiaries. All the parties, including the bank, occupied simply the relation of separate independent lienholders upon the property with an ordained priority to their lien claims and with interests which were not only not held in common, but which might well be exercised in hostility to each other. Of course, it cannot be contended, and is not contended, that there was any privity or community interest between the mortgage claim of the bank and the claim of the beneficiaries under the trust. So, eliminating the bank, the ultimate facts are that Wolfskill had a first lien upon the property for ten dollars an acre, or ten thou-

sand dollars. It mattered not to him for what the property was sold, so long as it was sold for sufficient to pay his debt. The same is true of the next lien claimant, Hansen. His interest was solely that the land should be sold for sufficient to pay his succeeding ten thousand dollars. Neither Wolfskill nor Hansen was in the least interested in seeing, or charged with any duty to see, that the land was sold for enough to pay the demands of subsequent lien claimants. True, equity, if not the law, would give each one of these lien claimants a right of redemption as contemplated by section 2903 of the Civil Code and as declared in *Smith* v. *McNutt,* 156 Cal. 769, [106 Pac. 70], where it is said that for the purposes of the decision it might be conceded that "plaintiffs had such an interest in this land as would have given them the right to obtain such relief as would practically constitute a redemption thereof, even though they may not have been entitled to redeem under the statutory provisions relating to redemption." But in this connection it is to be remembered that in their original action they did not attempt to redeem and the present action has been brought long after the statutory right has expired. Whether by virtue of the facts established any equitable right exists extending the statutory period is matter for later consideration.

But to return to the principal point in the case,—the charge that grave equities were imposed upon the Nuevo Land Company by virtue of the manner of its acquisition of the title. It is declared in *Smith* v. *McNutt* that the trust necessarily terminated upon the foreclosure sale. This is not only the law of the case but it is true in fact. "When the purpose for which an express trust was created ceases, the estate of the trustee also ceases." (Civ. Code, secs. 871, 2279.) "Upon a sale of real property the purchaser is substituted to and acquires all the right, title, interest and claim of the judgment debtor therein." (Code Civ. Proc., sec. 700.) "It is by the foreclosure sale that the title passes." (*Robinson* v. *Thornton,* 102 Cal. 680, [34 Pac. 120]; *Duff* v. *Randall,* 116 Cal. 229, [58 Am. St. Rep. 158, 48 Pac. 66]; *Breedlove* v. *Norwich etc. Ins. Society,* 124 Cal. 166, [56 Pac. 770].) The effect of the foreclosure sale "is of itself to extinguish the right and claim of all the defendants in the action acquired subsequent to the date of the mortgage, and to vest in the

purchaser the title of the mortgagor at the date of the mortgage, discharged of all such right and claim." (*Goodenow* v. *Ewer,* 16 Cal. 461, [76 Am. Dec. 540]; *Sichler* v. *Look,* 93 Cal. 600, 610, [29 Pac. 220]; *Marquam* v. *Ross,* 47 Or. 374, [78 Pac. 697, 83 Pac. 852, 86 Pac. 1].) It is only when the judgment debtor redeems that the effect of the sale is terminated and he is restored to his estate. (Code Civ. Proc., sec. 703; *Eldridge* v. *Wright,* 55 Cal. 535.) In other cases where one exercises the right of redemption when he is under no legal obligation so to do, as a junior lien claimant or a judgment creditor, his action is not in strictness a redemption but a purchase of the right and title acquired under the sale. (27 Cyc., 1866; *Eldridge* v. *Wright,* 55 Cal. 535.)

Coming thus to the rights and duties of the beneficiaries after this judicial sale, it is to be noted that the purchase was made by the bank which in no way was charged with any duty toward any of the beneficiaries. Moreover, the interests of the beneficiaries were included, determined, and foreclosed by the judgment and sale, not only by reason of the fact that in the foreclosure proceedings they were represented by their trustee McNutt who was a defendant, but also by virtue of the fact that McNutt's declaration of trust was not placed of record until after the *lis pendens* in the foreclosure action had been filed. (Civ. Code, secs. 1214, 1215.) Therefore, we have by virtue of this foreclosure and sale, the extinguishment of the trust and the beneficiaries' right under the trust, with title to the land going into the hands of a stranger in interest to the beneficiaries, freed from every claim, legal or equitable, upon their part saving their right of redemption. For the reasons already given, these beneficiaries, one and all, being before the court in the foreclosure proceedings are bound by its decree. What right of redemption was then open to them or any of them? Was it an equitable right which they might exercise at their pleasure years after, as here they seek to do, or was it the statutory right merely? Unquestionably it was the statutory right declared in section 702 of the Code of Civil Procedure. They and their rights were before the court in the foreclosure action. They were not in the position of subsequent lien claimants, mortgagees, or grantees not impleaded. They had no equities other than those which were passed upon in the action and they were

limited therefore to their statutory right of redemption. (*Whitney* v. *Higgins,* 10 Cal. 547, 554, [70 Am. Dec. 748].) This right admittedly they did not exercise.

It might well be sufficient to rest this decision here, but the contention is so earnestly pressed that because Miller acquired the Wolfskill and Hansen interests in the trust, his purchase of the certificate of sale from the bank in equity so redounded to the benefit of all the beneficiaries, that in effect it restored the trust, that it was a redemption as complete as though made by McNutt himself as trustee—that it is proper perhaps, briefly, to consider this position and show its untenableness. And this may be done by this simple declaration, that if Wolfskill himself had purchased the certificate of sale from the bank he would have received complete title to the property freed from any subsequent liens of Hansen and of plaintiffs and subject singly to their right of redemption which could be exercised only within the statutory period and only upon paying to him the amount not only of the judgment and costs of redemption, but the amount of his prior lien upon the property, and this, for the simple fact that even were the parties bound by the privity which exists in the case of tenants in common (though, as is plain, they were not), still there was nothing in the law to prevent any one of them from acquiring for his sole ownership the rights of all the others at a *judicial* sale which covered those rights. Such are the cases of *Gunter* v. *Laffan,* 7 Cal. 593; *Felten* v. *Le Breton,* 92 Cal. 466, [28 Pac. 490]; *Eldridge* v. *Wright,* 55 Cal. 536; *Smith* v. *Black,* 115 U. S. 308, [29 L. Ed. 398, 6 Sup. Ct. Rep. 50]; *Easton* v. *German American Bank,* 127 U. S. 532, [32 L. Ed. 210, 8 Sup. Ct. Rep. 1297]; *Starkweather* v. *Jenner,* 216 U. S. 524, [54 L. Ed. 602, 30 Sup. Ct. Rep. 382]; *Coleman* v. *Coleman,* 3 Dana (Ky.), 398, [28 Am. Dec. 93]; while Mr. Freeman (Cotenancy, sec. 165) says: ''The reasons which prevent a cotenant from purchasing and asserting an outstanding title, do not apply with equal and generally not with any force against his purchasing the title of his cotenants, whether the same be voluntary or involuntary. Unless some fraud can be shown to have been perpetrated, or some superior knowledge taken advantage of, there is no doubt that a cotenant may purchase at an execution or a judicial sale the moiety of any of his companions in interest, and that

he may retain and assert the title thereby acquired as fully as though he were a stranger to the judgment defendant.'' The reason of this is that it is only while a privity amounting to a community interest exists between the parties, with a corresponding duty on each to protect the others, that equity will not countenance the acquisition by one of a title adverse to the other. The rule ceases with the reason and the reason ceases at once when all those interests and all the privity and community interests have been terminated under their judicial sale.

And, finally, upon this branch of the case it may be added that, even where the doctrine of equitable contribution is applicable and is sought to be applied, the rule is that the offer of contribution and the demand of the right to contribute shall be promptly made. (*Stevenson* v. *Boyd,* 153 Cal. 630, [19 L. R. A. (N. S.) 525, 96 Pac. 284].) Here, even if the right existed, the proper offer is made years after the acquisition of the title, and after the land has doubled or trebled in value. Clearly, such an offer does not appeal to equity.

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.