## Snyder v. Vinson, et al.

(Decided December 14, 1915.)

## Appeal from Lawrence Circuit Court.

1. Joint Tenancy—Purchase by One at Tax Sale Inures to Benefit of Others.—Where land owned by several joint owners is sold for taxes and one of the joint owners purchases it at the sale, his purchase inures to the benefit of the other owners.

2. Joint Tenancy—Adverse Possession.—One joint owner of property cannot assert claim to it by adverse possession unless for the statutory period he openly and publicly claims the whole of the property in such a manner as to put the other joint owners on notice that he is asserting title to the whole of it adversely to them.

PROCTOR K. MALIN, W. D. O'NEAL and W. M. FULKERSON for appellant.

GARRED & GARRED and FRED M. VINSON for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In 1874 R. T. Burns, master commissioner of the Lawrence circuit court, sold at commisioner's sale a tract of land, containing about seventeen acres, to Charles Fletcher, who executed bonds for the purchase money, with John M. Rice, R. F. Vinson, K. F. Vinson and Jay H. Northup as his sureties. It seems that soon after the execution of the bonds and before a deed was made, Fletcher removed from that part of the country, and the purchase money remained unpaid until 1882. In 1882 the commissioner, by accident, saw Fletcher in Cincinnati, and upon explaining to him the situation, secured from him a writing directing that when the sureties should pay the purchase money the deed should be made to them instead of to him. After this writing was secured, the sureties paid to Burns the purchase money due on these bonds and he gave them a receipt showing that the interest of Fletcher as purchaser was transferred to them, although it does not appear that anything showing this transaction was at the time put on the records of the court, nor was any deed made at this time to the sureties.

In 1899 the property was sold for taxes and was purchased by Northup, but no deed was ever made to him by the sheriff. In 1907, Northup became a bankrupt and

surrendered to the trustee in bankruptcy as a part of his assets this tract of land, which was thereafter sold in 1907 by the trustee to the appellant, Snyder, to whom a deed was made in 1908. In 1912, this suit was brought by the heirs and vendees of the Vinsons against Snyder and Hannah M. Lackey for a division of the land into four parts; one part to the heirs of R. F. Vinson, another to the vendee of K. F. Vinson, another to Snyder as the owner of the interest of Northup, and another to Mrs. Lackey as the owner of the interest of Rice.

For answer to this suit Snyder set up title as the vendee of Northup at the bankrupt sale to three-fourths of the land, recognizing that Mrs. Lackey owned one-fourth; and the lower court having decided that he was only entitled to the one-fourth interest of Northup, he appeals.

It will be observed that all of the parties trace their title back to the assignment by Fletcher, and, it being admitted by everybody that Mrs. Lackey owns one-fourth of the land as the vendee of Rice, the only question is whether Snyder is entitled to the one-fourth interest owned by Northup, or to the two-fourths claimed by the heirs and vendees of the Vinsons as well as the one-fourth owned by Northup.

From this statement of fact it will be seen that neither the Vinsons, Rice nor Northup had any paper title to this land. They merely held it by virtue of the assignment made to them by Fletcher. But as neither Fletcher nor any one claiming under him is disputing the ownership, it may be assumed on this record that when the Vinsons, Rice and Northup paid the sale bonds, they came into the ownership of this land as joint tenants, each one of them owning an undivided one-fourth.

Counsel for Snyder question the right of those claiming under the Vinsons to assert ownership to any of this land, on the ground that it is not sufficiently shown that Fletcher transferred his bid to the sureties. It is, however, shown that Fletcher did execute a written assignment of his bid to the sureties, and, aside from this, Snyder asserts ownership to the land under the same character of title that the vendees and heirs of the Vinsons do. He is the vendee of Northup and they are vendees and heirs of the other transferees, so that one of them occupies in this respect as good a position as the other. If those claiming under the Vinsons are not en-

titled to any interest in the land on account of this alleged defect in the title, neither is Snyder: But, as stated, this question may be put aside, because Fletcher, the only person who could question the ownership of the sureties under this assignment, is not doing so.

There is also a contention on the part of Snyder that the vendee of K. F. Vinson has not exhibited any title to the land from his vendor. This question, however, is not so material. The issue in the case does not concern so much the right of the vendee of Vinson to the land as it does the right of Snyder to three-fourths of it, because if he is entitled to only one-fourth of it, as the lower court held, either K. F. Vinson is entitled to the one-fourth, or the appellee who claims under him, is the owner. So, that, whichever view of this matter may be taken, if the judgment of the lower court was correct, it does not make any material difference to Snyder who is the owner of the two-fourths interest that was owned by K. F. and R. F. Vinson in connection with Northup and Rice.

But, coming now to the claim of ownership on the part of Snyder, it appears that he traces his title to three-fourths of the land in this way. It seems that from 1882 until 1899 the whole of this land was not in the actual possession of any of the parties, although they exercised in different ways acts of ownership over it. It further appears that in 1899 the land was sold for taxes and Northup became the purchaser at the sale for $5.06, but no deed was ever made to Northup by the sheriff. At the time of this sale and purchase, Northup, in connection with the Vinsons and Rice, was the owner of an undivided one-fourth interest in the land, claiming it under the assignment by Fletcher, and when he bought the land in at this tax sale, his purchase inured to the benefit of the other joint owners, and it does not appear that Northup after his purchase at the tax sale openly asserted any title to the whole of this land or that he exercised such acts of ownership over the whole of it as would put the other joint owners on notice that he was claiming to hold the whole of it adversely to them. When Northup became a bankrupt, for some unexplained reason, he listed in his schedule of assets this seventeen acres of land, and, as stated, it was sold by the trustee in bankruptcy to Snyder in 1908, at which time the trustee executed a deed conveying the land to Snyder.

It is attempted to show that the Vinsons are estopped from asserting title against Snyder on the ground that they permitted him to buy at the bankrupt sale without notice of their claim, but there is not sufficient evidence to show this. Just why Northup should have scheduled the whole of this land in the bankruptcy proceedings as his property does not appear, but it is certain that if Snyder had made any investigation of the record before his purchase at the bankrupt sale, he could easily have discovered that Northup had no paper title to any of it.

After Snyder became the purchaser in 1908, he undertook to assert ownership to the whole of the land, and this resulted in the present litigation.

This statement covers all the material facts in the case, and upon these facts it is apparent that there is no merit in Snyder's assertion of ownership to three-fourths of this land. He is entitled to the interest of Northup and no more, and the judgment is affirmed.