## Ford v. Jellico Grocery Company, et al..

(Decided April 25, 1922.)

## Appeal from Bell Circuit Court.

1.  Tenancy in Common—Existence.—One who owns an undivided four-fifths interest in a tract of land and one who owns the remaining undivided one-fifth interest therein are tenants in common.

2.  Partnership—Existence—Tenancy in Common.—A mere tenancy in common does not create a partnership.

3.  Tenancy in Common—Acquiring Outstanding Title.—Co-tenants stand in such confidential relation to one another, in respect to the common property and the common title thereto, that one of them will not be permitted, without the consent of the others, to buy in an outstanding adversary claim or title and assert it for his exclusive benefit to the prejudice of his co-tenants; but the purchasing tenant is regarded as holding the claim so purchased in trust for the benefit of all of his co-tenants in proportion to their respective interests in the common property, who seasonably contribute their share of his necessary expenditures.

4.  Tenancy in Common—Acquiring Outstanding Title—Duration of Restraint.—After a co-tenancy has dissolved, there is nothing in the law which forbids a former tenant in common from acquiring

the entire property. He then has the same rights as any other person.

5. Tenancy in Common—Tenant in Common May Acquire Share of Another at Judicial Sale if Only Latter's Interest Be Sold.—One tenant in common may purchase the share of another at a judicial sale if the judgment or lien upon which such interest is sold is a lien only upon the undivided share of such other tenant in common.

6. Tenancy in Common—Acquiring Outstanding Title—Liability.— F owned an undivided one-fifth and C an undivided four-fifths interest in a tract of land. A creditor of F obtained judgment against him and had an execution issued which was levied on F's interest in the land. That interest was sold and the creditor became the purchaser and received a deed from the sheriff. The property brought more than two-thirds of its appraised value, and F had no right to redeem. However, the purchaser agreed to reconvey the land to F if he would pay his indebtedness by June 1, 1917. C purchased the property from the creditor with the understanding that if F appeared on or before June 1, 1917, and discharged his indebtedness, the transaction was not to become effective. F did not discharge his indebtedness on June 1st and the sale by the creditor to C was consummated on June 2nd. Held, that as F had then parted with his title and had no enforcible right to redeem, the co-tenancy theretofore existing between him and C had ended, and C had the legal right to make the purchase.

JAMES M. GILBERT and D. Y. LITTLE for appellant.

N. R. PATTERSON and JAMES JEFFRIES for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

R. C. Ford owned an undivided one-fifth and E. C. Camp an undivided four-fifths interest in certain lands located in Bell county.

The Jellico Grocery Company and the House-Hasson Hardware Company recovered of Ford two judgments which, together with interest and costs, amounted to about $8,724.10. In the year 1916, executions were issued and one of them was levied on Ford's one-fifth interest in the Bell county lands. Ford's interest was sold on June 12, 1916, and the Jellico Grocery Company became the purchaser at the price of $810.00, which was more than two-thirds of the appraised value. On March 21, 1917, the sheriff executed, acknowledged and delivered to the Jellico Grocery Company a deed conveying the lands purchased. Though the grocery company had acquired Ford's title to the one-fifth interest, N. R. Patter-

son, the attorney representing the company, agreed that if Ford would discharge his indebtedness by June 1st, 1917, the company would convey the one-fifth interest to Ford. Within a few weeks after obtaining the deed, negotiations were begun between A. T. Siler, president of the Jellico Grocery Company, and E. C. Camp, looking to the sale of the one-fifth interest. After some correspondence Camp came to Middlesboro and agreed with A. T. Siler to purchase the one-fifth interest for $2,-000.00. When the proposed deal was brought to the attention of Mr. Patterson, he informed Siler and Camp of his agreement with Ford, and stated that the company would not close the deal with him until after June 1st. In order to avoid making a second trip to Pineville, a deed conveying the one-fifth interest was prepared, executed and acknowledged by Siler as president of the Jellico Grocery Company. At the same time Camp drew a check for $2,000.00, payable to the company. The check and deed were left with Mr. Patterson, with the understanding that if Ford appeared on or before June 1, 1917, and discharged his indebtedness, the transaction was not to become effective. As Ford did not appear and make the payments on June 1st, the deed was lodged for record on June 2, 1917, and the check cashed by the Jellico Grocery Company. Instead of crediting Ford with the $810.00 for which his interest was sold, the grocery company credited him with the $2,000.00, paid by Camp.

This suit was brought by Ford against the Jellico Grocery Company and E. C. Camp to set aside the deed to Camp and require the grocery company to convey the lands to Ford. Camp filed an answer and counterclaim asking that his title be quieted. On final hearing the petition was dismissed and Camp's title was quieted. Ford appeals.

It is insisted that plaintiff should have been granted the relief prayed for because plaintiff and Camp were partners and Camp's conduct was a fraud on the partnership relation. There is no evidence in the record tending to show a partnership. It merely appears that Ford sold Camp a four-fifths interest in a portion of the land, while Camp acquired a four-fifths interest in the other lands in question from another party. That being true, Ford and Camp were tenants in common, Craig v. Taylor, 6 B. Mon. 457, and no principle of law is better settled than that a mere tenancy in common does not

create a partnership. Clarke v. Sidway, 142 U. S. 682, 35 L. Ed. 1157; Doak v. Swann, 8 Me. 172, 32 Am. Dec. 233; Howe v. Howe, 99 Mass. 71.

As no partnership was shown, we must consider the rights of the parties in the light of their relation as cotenants. It is the rule that cotenants stand in such confidential relation to one another, in respect to the common property and the common title thereto, that one of them will not be permitted, without the consent of the others, to buy in an outstanding adversary claim or title and assert it for his exclusive benefit to the prejudice of his cotenants. In such case the purchasing tenant is regarded as holding the claim so purchased in trust for the benefit of all his cotenants, in proportion to their respective interests in the common property, who seasonably contribute their share of his necessary expenditures. Starkweather v. Jenner, 216 U. S. 524, 54 L. Ed. 602, 17 Ann. Cas. 1167; McClanahan's Heirs v. Henderson's Heirs, 2 A. K. Marsh. 388, 12 Am. Dec. 412; Venable v. Beauchamp, 3 Dana 321, 28 Am. Dec. 74; Sneed's Heirs v. Atherton, 6 Dana 276, 32 Am. Dec. 70; Fields v. Farmers & Drovers Bank, 110 Ky. 260; Spurlock v. Spurlock, 161 Ky. 248, 170 S. W. 605; Snyder v. Vinson, 167 Ky. 332, 180 S. W. 774; 7 R. C. L., p. 858. But the duration of the restraint upon the acquisition and assertion of a paramount adverse title is coextensive only with the existence in fact of the relation of cotenancy. It can neither precede the cotenancy nor continue after the community of interests has ceased. Therefore, after a cotenancy has dissolved, there is nothing in the law which forbids a former tenant in common from acquiring the entire property. He then has the same rights as any other person. Coleman v. Coleman, 3 Dana 398, 28 Am. Dec. 86; Watkins v. Eaton, 30 Me. 529, 50 Am. Dec. 637; 7 R. C. L., p. 861. Not only so, but one tenant in common may purchase the share of another at a judicial sale if the judgment or lien upon which such interest is sold is a lien only upon the undivided share of such other tenant in common. McNutt v. Nuevo Land Co., 167 Cal. 459, 140 Pac. 6. In this case there was no outstanding claim against the common property. The execution was against Ford alone and was levied only on his interest in the land. That interest was sold and the grocery company became the purchaser and received from the sheriff a conveyance to the property. As the property brought more than two-thirds of its appraised value, Ford had

no right of redemption. However, the grocery company agreed with Ford, that if he would discharge his indebtedness by June 1st, it would reconvey to him the property. This, Ford failed to do, and the purchase theretofore agreed upon between the grocery company and Camp was consummated on June 2nd. As Ford had then parted with his title and had no enforcible right to redeem, it is clear that the cotenancy theretofore existing between him and Camp had ended, and that Camp had the legal right to make the purchase.

Judgment affirmed.