### JOHN L. COTTINGHAM *et al.*

*v.*

### FRANCIS SPRINGER.

1. EXECUTION—*mortgagor's interest may be sold under execution in favor of mortgagee.* In this State, the mortgagor's equity of redemption in the mortgaged premises may be sold on execution issued on a judgment at law, in favor of the mortgagee, for the mortgage debt. At common law, the rule seems to have been different. By that system, the equity of redemption could be cut off only by foreclosure in equity.

2. SAME—*when sale of mortgagor's interest operates as a foreclosure.* A sale under an execution, on a judgment for the debt secured by a mortgage, operates as a foreclosure of the mortgage, with the same rights of redemption to the debtor and creditors as on a sale under a decree of foreclosure. By such sale and sheriff's deed to the mortgagee, he acquires the equity of redemption, which, united with his estate under the mortgage, gives him the absolute title.

3. SAME — *issued, for first time, after one year.* If a judgment creditor sue out an execution on his judgment, for the first time, after the expiration of one year, and sell, the sale will be good and the title pass, unless the judgment debtor takes timely steps to set the sale aside. His failing to do so is an implied admission that the judgment was not satisfied, and the sale was rightfully made.*

4. SHERIFF'S DEED—*made over seven years after judgment became a lien.* A sheriff's deed for land sold under execution, made eight years and three months after the judgment became a lien on the land, is not void as against the heirs of the judgment debtor, who take as mere volunteers. This case is to be distinguished from those of *Rucker* v. *Dooley,* 49 Ill. 377, and *Hannan* v. *Larned,*

---

*See act of Mar. 22, 1872, (Laws 1871–2, 505; Rev. Stat. 1874, 621,) as to effect of issuing execution, for the first time, after one year, but within the seven years.

58 id. 167, holding such deed inoperative to pass the title as against *bona fide* purchasers from the judgment debtor. It was not said, nor intended to be said, in those cases, that a deed made after the expiration of seven years would be void as to the judgment debtor, or those claiming under him as volunteers.

5. Judgment—*revivor of lien when lost by not suing out execution.* A judgment creditor may revive his judgment, after his lien has expired from not suing out an execution within one year, against the judgment debtor, but can not thereby affect the rights of an intermediate *bona fide* purchaser.

6. Practice—*when specific objection must be made.* If a judgment, introduced in evidence in support of an execution and sheriff's deed, has no *placita*, showing in what court it was rendered, it must be objected to specifically, on this account, in the court below, to afford an opportunity to obviate the defect, or the objection can not prevail in this court.

7. Tax title—*judgment and precept necessary.* A tax deed for land, without introducing in evidence the judgment and precept for the sale, shows no title. A valid judgment and precept are indispensable to show a transfer of title by a tax deed.

Writ of Error to the Circuit Court of Montgomery county; the Hon. James C. Allen, Judge, presiding.

Mr. James M. Truitt, and Mr. Thomas J. Rutledge, for the plaintiffs in error.

Messrs. Rice & Miller, for the defendant in error.

Mr. Justice Walker delivered the opinion of the Court:

Plaintiffs in error brought ejectment, against defendant in error, to recover the land in controversy. A trial was had by the court, without a jury, by consent of the parties. The court found for, and rendered a judgment in favor of, defendant, and the plaintiffs below bring the record here on error.

It appears that the father of plaintiffs in error, who is deceased, entered the land and obtained a patent from the general government, and they claimed title from him by descent, and by deed from others, his heirs at law. They thus showed a *prima facie* title in fee.

Defendant claimed to derive title from Cottingham, the ancestor of plaintiffs, by a mortgage, executed by him to the

school commissioner of Montgomery county, on the land, for $100, executed in the month of March, 1842, payable in one year; also, a judgment on the debt, recovered by the school commissioner in April, 1844; an execution issued thereon September 8, 1845, to the sheriff, and levied on the mortgaged premises on the 25th of October, 1845, indorsed, levied on the land in controversy. On the 6th of December following, the sheriff sold the land to the school commissioner of the county, in satisfaction of the execution and costs, and executed a certificate of purchase therefor, and the execution was returned satisfied by sale of the land; also, a deed made by the sheriff to the school commissioner, dated the 30th day of November, 1854.

It appears that on the 5th of July, 1870, one Boutwell entered into possession of the property, it having previously been, and then was, unimproved, vacant and unoccupied. Boutwell fenced and reduced to cultivation 40 acres of the land, and held possession until August, 1875, when he conveyed the land, by a quitclaim deed, to defendant, the county superintendent of public schools, who then took and held possession until this suit was brought. The land lay within half a mile, and within sight, of Wm. Cottingham's residence, and he knew of Boutwell's possession and improvements on the land. Cottingham died in September, 1874.

Numerous objections are urged against the finding and judgment of the court below. It is, first, insisted that the sale under the judgment and execution in favor of the school commissioner was void, because the mortgage was then a lien on the land to secure the debt, and the mortgagor's interest in the land could not be sold under the judgment for the debt; and numerous authorities are cited to sustain the position. There would seem to be no doubt that at common law, where it is held the mortgagee holds the legal title in fee, and the mortgagor has a mere equity of redemption, such is the rule. It is a familiar rule of that system of jurisprudence, that a mere equitable right can not be seized and sold on an

execution under a judgment at law; that common law courts, in adjudicating and settling the rights of parties, or in the use of their process, can never settle equities, or subject such rights to sale or transfer; that such courts can only deal with and enforce legal rights, leaving it to the courts of chancery to settle and control equitable rights. Hence, a mere equity of redemption could not be sold under an execution at law, or, in fact, any other equity. It therefore followed that the mortgagee was compelled to resort to equity to foreclose or cut off the equity of redemption, and the mortgagor was compelled, when it became necessary to do so, to apply to a court of equity to enforce a redemption.

But many of the States—and ours of the number—have, by enactment, made great modifications of the rule. Our legislature, at an early day, provided that, when the mortgagor paid and satisfied the debt, and the mortgage had been recorded, he might compel the mortgagee to enter a satisfaction of the mortgage on the margin of the record, which should operate as a discharge and release of the same, and forever bar all actions that might be brought thereon. This provision is found in the act establishing the recorder's office, (Pub. Laws 1819, page 19, sec. 5,) and has been continued in force ever since. This was a most material modification of the common law rule, as it reinvested the mortgagor with the title simply by the mortgagee stating, over his signature, on the margin of the record, that he had received satisfaction of the debt, and dispensing with a release or reconveyance for the purpose.

Another innovation is found in an enactment of the session of 1825, (page 157, sec. 18,) concerning judgments and executions, which has also been continued in force to the present time. That section provides, that a mortgagee may foreclose at law by a *scire facias,* and that the mortgaged premises may be sold on a special *fieri facias,* thus, in favor of the mortgagee, permitting the recovery of a judgment at law, against the property, and a sale thereof under an execution at

law. This changed the rule, that the mortgagee must resort to equity to foreclose the equity of redemption, but permitted him, if he chose, to sell it on execution, thus recognizing it as an interest, or title, that might thus be sold on an execution at law, subject to the same incidents that other sales of real estate were under, when sold on ordinary executions at law. Thus we see that the General Assembly commenced a modification of the rigors of the common law, and the courts, as far as the power existed, by moulding its plastic rules, and extending its comprehensive principles to the new and varying circumstances of our advance in civilization, trade, manufactures and commerce, and avoided many of the impediments that stood in the way of progress.

Anciently, land could not be sold by the person claiming its ownership; nor could he mortgage it for any purpose; nor could it be subjected to sale on execution; but as commerce advanced, and the business and wants of trade increased, in various modes, and by slight changes by legislation, these shackles were removed, and land ultimately, but at no remote period, became an article of commerce, and subject, like personalty, to the requirements of trade. The policy of restraining its alienation has given place to the demands of the times, and its acquisition is free to all who desire its ownership.

The legislature further extended the liability of equitable titles and interests in lands to sale on executions at law, by the first section of the chapter entitled "Judgments and Executions." (Rev. Stat. 1845, page 300.) That section creates a lien on lands, tenements and real estate, by the rendition of a judgment in the circuit court, and subjects them to sale on execution. It also defines the meaning of the term thus: "The term, 'real estate,' in this section, shall be construed to include all interest of the defendant, or any person to his use, held or claimed by virtue of any deed, bond, covenant or otherwise, for a conveyance, or as mortgagee or mortgagor of lands, in fee, for life or years." This, in the plainest and most general terms, renders the mortgagor's interest, whatever

it be, liable to sale on execution. There is no reservation, limitation or exception. It does not provide that his interest may be sold on execution, except on one in favor of the mortgagee, or on a judgment for the mortgage debt. The language naturally embraces executions on this as well as all other classes of debts.

A sale under an execution on a judgment for the debt secured by the mortgage operates to foreclose the mortgage, with the same rights of redemption to the debtor or creditors that is required on sales under decrees of foreclosure; and we fail to see that it can work any injury or inconvenience to the debtor, but places it on the same footing with sales of land under execution, depriving the mortgagor of no right that is enjoyed by others having their lands sold on execution; and whether the effect of the sale is the same as if the equity of redemption should be sold on an execution under a judgment not for the mortgage debt, and when not bought in by the mortgagee, does not arise in this case, as the mortgagee held all the title not owned by the mortgagor, and he, by the sale and sheriff's deed, became, also, the owner of the title of the latter, thus uniting the equity of redemption with the estate he held as mortgagee, and becoming thereby invested with all the title absolutely. Nor does any question arise as to whether an unsatisfied portion of the mortgage debt would or could continue to be a lien on the premises, as, in this case, the entire judgment and costs were satisfied by the purchase, and the debt became thereby extinguished.

In the case of *Fitch* v. *Pincknard*, 4 Scam. 69, it was said, that the mortgagor was now regarded, for all beneficial purposes, as the real owner of the land, subject to the payment of the money; that the statute had subjected lands, tenements and real estate to sale on execution; that the doctrine held in regard to the estate of the mortgagor is, that he is the real owner of the estate, only subject to the rights and incumbrance of the mortgagee, and that the equity of redemption is liable to execution for debt; that it would pass to the pur-

chaser at the execution sale, subject to the same rights of redemption as the land itself, and, also, to all the rights of the mortgagee. And the case of *Curtis* v. *Root,* 20 Ill. 518, recognizes the power to mortgage an equity in lands, to foreclose by *scire facias,* sale on special *fi. fa.,* a redemption by a judgment creditor, and a sheriff's deed to the purchaser, and that he thereby acquires the equity thus mortgaged, and may pass it by conveyance. In the case of *Fitch* v. *Pincknard, supra,* the question was raised and argued,—so the point was properly considered; and the doctrine of that case seems to have been received and acted upon by the profession ever since. The case of *Curtis* v. *Root, supra,* gives effect to the first section of the act of 1845, which, in its language, is broader than the act which was construed in *Fitch* v. *Pincknard.* We have no hesitation in holding that the equity of redemption in this case was liable to be sold as it was, under the ruling in *Fitch's case;* but if there could be any doubt of the correctness of that decision, there is none in this case, as the sale was made after the act of 1845 went into operation, the execution being issued and the levy and sale made on and after the 10th of September of that year, the time when that revision went into operation.

It is next urged, that the sheriff's deed to the school commissioner was executed more than eight years and three months after the judgment became a lien, and without an order of court, and that it is, therefore, void; and *Rucker* v. *Dooley,* 49 Ill. 377, and *Hannan* v. *Larned,* 58 id. 167, are referred to as sustaining the proposition. In this case, there is no evidence to show that the proper order of court was not obtained requiring the sheriff to execute the deed. The statute requiring him to do so, and he having executed it, and it being *prima facie* evidence of a compliance with the statute, until rebutted, the presumption must obtain that he has not violated his duty, and it must be presumed to be regular until rebutted.

Again, the cases referred to are, essentially, different from

the case at bar.  There, purchasers from the judgment debtor were claiming against the sheriff's deed; whilst here, it is the heirs of the judgment debtor who are claiming against the sheriff's deed.  They do not occupy the attitude of *bona fide* purchasers, as they take, if at all, as heirs and volunteers. The stress of the opinion in *Rucker's case* was based on the injustice to innocent purchasers to permit a purchaser at a sheriff's sale to retain it for more than eight years and three months, and permit persons, after that period, to purchase in good faith, and paying value therefor, and then obtain a sheriff's deed and sweep the property from them.  It was not said, nor was it intended to be said, that a deed made after the expiration of that period would be void as to the judgment debtor, or those claiming under him as volunteers.  If the judgment has been paid, or a redemption or other satisfaction had, the judgment debtor has the evidence, and can make the proof; but not so with the purchaser.

Again, a judgment creditor may have rights he can enforce against his debtor, that he could not against innocent purchasers.  He may revive his judgment, after the lien expires by not suing out an execution within a year, against the judgment debtor, but can not thereby affect the rights of an intermediate *bona fide* purchaser.  If he sue out execution after the year, without any previous one, and sell, the sale will be good, and the title pass, unless the judgment debtor takes timely steps to set aside the sale.  His failing to do so, is an implied admission that the judgment was not satisfied, and the sale rightfully made.  So, here, having taken no steps to arrest the action of the sheriff in making the deed, and in doing nothing, after it was made, to have it canceled, it may well be presumed the debt was not satisfied, or a redemption made, and the sheriff's deed was rightfully executed.  We are unwilling to apply the same rule to the judgment debtor, or those claiming under him as volunteers, that is applied to innocent purchasers.

7—88 ILL.

It is urged that the judgment read in evidence to support the execution and sheriff's deed had no *placita*, and, from it, we can not know in what court it was rendered. The objection can not prevail, for the reason that it was not specifically made in the court below, where it could, no doubt, have been obviated at once. It is too late to raise this question, for the first time, in this court.

The doctrine of the cases referred to, that the mortgagee must make entry, under his mortgage, within twenty years, or it will be barred, has no application, as the mortgage ceased to exist when it was foreclosed by sale and a failure to redeem. After that, the right of entry was as the owner in fee, and not as mortgagee.

The tax deed can not affect the rights of the parties in this case, as no judgment or precept was read in evidence, which was as essential as a judgment and execution to support a sheriff's deed, as evidence of title. In a tax sale, there must be a judgment, a precept, which is declared to be the execution, and a tax deed, to show a transfer of title to the purchaser. These are indispensable.

After a careful examination of the record in this case, we fail to find any error requiring a reversal of the judgment of the court below, and it must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY: I concur in the conclusion in this case, but do not concur in the reasoning in the opinion.