Argued February 6, affirmed February 26, 1918.

# WEBSTER *v.* ROGERS.

(171 Pac. 197.)

**Execution—Execution Sale—Delivery of Deed.**

1. Under the Oregon practice a sale on execution partakes of the character of a judicial sale. The right of a purchaser at such a sale to a sheriff's deed is not lost by the expiration of the time within which a second execution could issue on the judgment.

**Execution—Acquiring Land at Judicial Sale.**

2. It was not fraudulent for a mortgagee of land, who on account of a great number of judgment liens did not desire to foreclose at great expense, to induce a judgment creditor to issue an execution and sell the land, and to buy the land at the sale.

**Reformation of Instruments—Mortgages—Foreclosure.**

3. A mortgage given as security for an accommodation "note to F. and B.," whereas the note was in favor of W. O., executed at the F. and B. Bank, evidencing a loan made through the good offices of the bank, could be reformed in a foreclosure against the accommodated party.

[As to reformation of bills and notes, see note in 65 Am. St. Rep. 519.]

**Tenancy in Common—Mortgage by One to Another—Who may Purchase at Foreclosure.**

4. Where a tenant in common mortgages his interest to another tenant in common, the latter can buy at a foreclosure sale.

Tenancy in Common—Buying Interest of Another at Judicial Sale.

5. A tenant in common can buy the interest of another tenant at a public sale under execution without being charged as a trustee for such tenant, although he would be a trustee if he bought an outstanding hostile title.

Tenancy in Common — Judicial Sales — Adequacy of Consideration — Evidence.

6. Evidence *held* to warrant a finding that a tenant in common did not buy the interest of another tenant at a judicial sale at an inadequate price.

Execution—Sales—Action to Set Aside—Laches.

7. Where the interest of a tenant in common in real property is encumbered with judgment liens in excess of its value, and where such tenant stands by for eighteen years after his cotenant has purchased the former's moiety at execution sale, the purchaser paying all taxes and street improvements and constructing a valuable building on the land, the former will not be heard to attack the execution sale after the expiration of the liens of the judgment with which the property is encumbered. A suit making such an attack on his behalf is barred by laches.

From Coos: GEORGE F. SKIPWORTH, Judge.

Department 2. Statement by MR. JUSTICE MC-CAMANT.

In 1890 the defendant S. C. Rogers and W. G. Webster contracted for the purchase of Lots 2, 3, 6 and 7 in Block 2 of E. B. Dean & Company's Second Addition to Marshfield. A deed in their favor was executed December 1, 1892; they held the property as tenants in common. Webster's interest in the property immediately became subject to a number of liens. The first of these was a mortgage he gave the defendant Rogers May 14, 1891, to secure the latter on an indorsement of a $500 note which Rogers signed for the accommodation of Webster. The second of them was a judgment in the sum of $399.50 recovered against Webster by Eichold and Miller October 3, 1892. Sundry other judgments were docketed against Webster in 1892 and still others were recovered later.

Webster paid the interest on the note indorsed by Rogers until May 13, 1894. Thereafter he made no

payments and on December 18, 1894, Rogers was obliged to meet the note, paying the sum of $529.25. From the time when the contract of purchase was made in 1890 Rogers had paid all the taxes and other charges incident to carrying the property. By 1896 Webster was in his debt to the amount of $200 additional on these accounts. In 1895 Webster left Oregon, acquired a residence in Arizona and remained there until his death on October 7, 1904. He was hopelessly insolvent when he left this state. The plaintiff Walter H. Webster is his son and the plaintiff Alma Webster is his granddaughter. They, with Annie Webster, his widow, are his heirs at law.

In the spring of 1896 the defendant Rogers consulted Mr. J. W. Bennett of the Coos County bar with a view to the foreclosure of his mortgage. Mr. Bennett advised him that so many judgments had been docketed against Webster that the foreclosure of the mortgage would be expensive and burdensome. Mr. Bennett suggested a sale of the property under the Eichold and Miller judgment which Bennett had secured. Rogers acceded to this suggestion. An execution was sued out, the property was regularly advertised in the newspaper which published notices of all sheriff's sales and on May 14, 1896, the interest of Webster in these lots was purchased by Frank Rogers in trust for S. C. Rogers for $40. The sale was reported to the court and was confirmed October 13, 1896.

Thereafter S. C. Rogers exercised dominion over the property. The lots were used for the storage of lumber and stone, permission for such use being given by the defendant S. C. Rogers, who continued to pay the taxes. He also paid a heavy municipal lien for a street improvement.

A sheriff's deed in favor of Frank Rogers was executed October 29, 1906, and he conveyed the property to S. C. Rogers. On January 11, 1904, S. C. Rogers acquired title to Lots 1 and 8 in the same block and in June, 1906, he began the construction of a two-story building which was completed the following year at a cost of $10,000 and which covers the lots purchased in 1904 as well as those in dispute in this case. Since then this defendant has been in the actual and exclusive possession of the property.

Annie Webster conveyed her dower right to S. C. Rogers September 17, 1912, for a consideration of $25.

On May 28, 1915, plaintiffs filed their complaint alleging that they are the owners of the property and praying that the sheriff's deed to Frank Rogers be set aside as a cloud upon their title. It will not be necessary to review the pleadings, it is enough to say that they were sufficient to present the questions on which the case turns.

The Circuit Court dismissed the complaint and plaintiffs appeal.          AFFIRMED.

For appellants there was a brief over the names of *Mr. Woodson T. Slater* and *Messrs. Stoll & Hodge,* with an oral argument by *Mr. Slater.*

For respondents there was a brief over the names of *Mr. A. J. Sherwood, Mr. Lawrence A. Liljeqvist* and *Messrs. Bennett, Swanton & Bennett,* with an oral argument by *Mr. Sherwood.*

MR. JUSTICE MCCAMANT delivered the opinion of the court.

Plaintiffs rely chiefly on the fact that the sheriff's deed was not issued to Frank Rogers until October 29, 1906. The sale was made on an execution based on

a judgment recovered October 3, 1892. The execution was issued March 11, 1896. A period of more than ten years elapsed between the date of this execution and the date of the sheriff's deed; it appears that no further executions were issued in the interim. Section 241, B. & C. Code, then in force and since repealed, was as follows:

"If, at any time after the entry of judgment, a period of ten consecutive years shall have elapsed without an execution being issued on such judgment during such period, no execution shall thereafter issue on such judgment, and such judgment shall thereafter be conclusively presumed to be paid and satisfied unless an execution be issued thereon within one year from the passage of this act."

1. Plaintiffs contend that a sheriff's deed cannot lawfully issue after the judgment on which it is based has lost its vitality. We are cited to a long line of authority to the effect that a valid sale cannot be made under an execution issued on a dead judgment. Plaintiffs cite the following cases in support of their ultimate contention that when the life of a judgment ends a sheriff's deed cannot thereafter issue to consummate a sale made while the judgment was effective: *Dixon* v. *Dixon*, 89 App. Div. 603 (85 N. Y. Supp. 609); *Middlesboro Waterworks* v. *Neal*, 105 Ky. 586 (49 S. W. 428); *McCall* v. *White*, 73 Ala. 562; *Rucker* v. *Dooley*, 49 Ill. 377 (95 Am. Dec. 614); *Harmon* v. *Larned*, 58 Ill. 167, 169; *Cottingham* v. *Springer*, 88 Ill. 90; *Peterson* v. *Emmerson*, 135 Ill. 55 (25 N. E. 842); *Rann* v. *McTiernan*, 187 Ill. 193 (58 N. E. 390); *Bradley* v. *Lightcap*, 202 Ill. 154 (67 N. E. 45).

The later Illinois cases do not tend to support plaintiffs' contention, because they are based wholly on an Illinois statute which forbids the execution of a

sheriff's deed after the lapse of five years from the expiration of the period of redemption. The authority of the earlier Illinois cases is destroyed for the purposes of this case by the decision in *Cottingham* v. *Springer*, 88 Ill. 90, 96, 97. This case squarely holds that objection to a sheriff's deed on the ground here asserted is available only to an innocent purchaser from the execution defendant; it cannot be urged by his heirs.

The Alabama case holds that when a sheriff's deed is applied for ten years after the sale, in the absence of evidence that the purchaser has been in possession, an explanation of the delay should be offered. The doctrine of this case does not help plaintiffs. It abundantly appears that all acts of dominion over the property in dispute were exercised by S. C. Rogers at all times after the sheriff's sale and that when the sheriff's deed was secured his possession was actual, hostile and complete.

As we read the Kentucky case it does not hold that a sheriff's deed must be executed during the life of the judgment under which the sale is made. In that case the sale was made in 1853; there was no satisfactory proof that the purchase price had ever been paid; the defendant in the writ continued to live on the land for seven years after the sale; the plaintiff in the writ lived in the immediate neighborhood and must have known of the occupancy of the land; it was doubtful if the purchaser had ever been in possession, but if so, he had given up possession prior to the Civil War; the sheriff's deed was executed in 1894, forty-one years after the sale. It was held that a conclusive presumption should be indulged that the debtor had redeemed from the sale.

The case of *Dixon* v. *Dixon,* 89 App. Div. 603, 607–
609 (85 N. Y. Supp. 609), turns largely on the fact
that the deed was executed forty-three years after
the sale. The opinion lays some emphasis on the ex-
piration of the lien of the judgment before the issu-
ance of the deed. Under the laws of New York in
force at the time when this sale was made there was
no requirement that the sheriff should report his pro-
ceedings, nor was any provision made for confirma-
tion: Vol. 3, Rev. Stats. N. Y. (5 ed.), pp. 651–655.
The sale which took place was an execution, as dis-
tinguished from a judicial, sale. If such a sale is
made in violation of law, the title of the defendant is
not disturbed and the judgment of plaintiff is not
impaired. There is no provision for curing the de-
fects by an order of confirmation passed after the
expiration of a period allowed for exceptions to the
regularity of the sale. Under the Oregon statute a
sale on execution partakes of the character of a judicial
sale. It must be reported to the court; it becomes ef-
fective to start the period of redemption only when
it is confirmed. The Oregon statute allows a time
after the filing of the report of sale within which any
party interested may call the attention of the court to
irregularities in the sale. The confirmation of the sale
is an acceptance by the court of the bid of the pur-
chaser. The judgment debtor is credited with the
amount of the bid; if he redeems the effect of the
sale is abrogated, but the judgment stands satisfied
in whole or in part in accordance with the price for
which the property is sold. In any event the judgment
is satisfied to the extent of the purchase price. The
rights of the purchaser are based on the price paid
for the property and credited on the judgment. In
the event of redemption the purchaser receives this

sum with interest. He is not concerned with the remainder of the judgment debt and we cannot see why the expiration of its lien should affect his right to a sheriff's deed. As to the distinction between execution and judicial sales, see 17 Am. & Eng. Enc. Law (2 ed.), 956; Rorer on Judicial Sales (2 ed.), 247; *Noland* v. *Barrett*, 122 Mo. 181 (26 S. W. 692).

In *Talbot* v. *Cook,* 57 Or. 535, 538 (112 Pac. 709), Mr. Justice BURNETT discusses *Dixon* v. *Dixon,* 89 App. Div. 603 (85 N. Y. Supp. 609), and distinguishes the New York law from the Oregon law on another ground which is conclusive of this branch of the controversy. His opinion states:

"No limitation is expressly provided by our Code against the time within which a sheriff may execute a deed to the purchaser at a foreclosure sale."

The statute in force when the sheriff's deed to Frank Rogers was executed, Section 1035, B. & C. Code, is as follows:

"The former sheriff shall return all process, whether before or after judgment or decree, which he has fully executed, and shall complete the execution of all final process which he has begun to execute: Provided, that in all cases where real property has been or may be sold under execution by any sheriff, and he shall fail or neglect during his term of office, by virtue of the expiration thereof, or otherwise, to make or execute a proper sheriff's deed conveying said property to the purchaser; or if through mistake in its execution, or otherwise, any sheriff's deed shall be inoperative, the sheriff in office at any time after such purchaser shall be entitled to a deed shall execute such conveyance, and such conveyance so executed shall have the same force and effect as if made by the sheriff who made the sale."

A fair construction of this statute negatives this contention of plaintiffs. The sheriff is required to

execute the conveyance "at any time after such purchaser shall be entitled to a deed." To hold that the purchaser's right to a deed expires with the lien of the judgment under which the property is sold would be to read into the statute words which the legislature has not written there and to disregard the legislative intent manifested by the language above quoted.

2. Plaintiffs' charges of fraud are not borne out by the evidence. The sale took place at a time when Webster had left the state and abandoned all intention of settling with his creditors. He had executed eight mortgages for sums aggregating $13,006.13. Six of these mortgages had been foreclosed prior to the time when defendants purchased the property in dispute. S. C. Rogers had been more lenient than most of Webster's creditors. Webster's interest in the property in dispute was subject to the lien of the Rogers mortgage for $500 and to the lien of twelve judgments aggregating $7,038.10. No witness gives the property such a value as to allow Webster any beneficial interest in it over and above these liens. The preponderance of the testimony shows that Webster's half of the property was worth far less than the liens with which it was encumbered. Rogers had paid all taxes levied from 1890 to 1896. He was carrying Webster for $200 in excess of the mortgage debt. He was entitled to a settlement.

Mr. Bennett is not subject to criticism for suggesting a sale under the Eichold and Miller judgment in lieu of the burdensome and expensive remedy of foreclosure. The result was a credit to Eichold and Miller of $13.75 in excess of the expenses of sale. The Rogers mortgage was the first lien on the land. The Eichold and Miller judgment was an honest debt. The proceeding was not collusive, but was an effort of a

patient creditor to make some salvage on an indebtedness which would have been wholly lost in the absence of affirmative action on his part. The proceedings were strictly in accord with the statute. The case has nothing in common with *Conklin* v. *La Dow,* 33 Or. 354 (54 Pac. 218).

3. It is argued that Webster's mortgage to S. C. Rogers was defective in that it described the accommodation note signed by Rogers as "a note to Flanagan & Bennett," whereas it was a note in favor of Walter Oldland executed at the Flanagan & Bennett bank evidencing a loan made through the good offices of the bank. The mortgage gave the date, amount and maturity of the note correctly; it recited that Rogers signed the note as "security" for Webster. It is doubtful if this mortgage can be said to be defective under plaintiff's authorities: See *New* v. *Sailors,* 114 Ind. 407, 410 (16 N. E. 609, 5 Am. St. Rep. 632) ; *Bowen* v. *Ratcliff,* 140 Ind. 393, 397 (39 N. E. 860, 49 Am. St. Rep. 203). In any event the mortgage could have been reformed as against Webster in a foreclosure suit: *Bramhall* v. *Flood,* 41 Conn. 68.

4, 5. It is suggested that Rogers as the tenant in common of Webster was disqualified from purchasing. By mortgaging his interest in the property to Rogers, Webster consented that Rogers might buy at a foreclosure sale: *Twin Lick Co.* v. *Marbury,* 91 U. S. 587, 590 (23 L. Ed. 328) ; *In re Gaslight Co. Cases* (*Rawlings* v. *New Memphis Gaslight Co.*), 105 Tenn. 268 (60 S. W. 206, 214, 80 Am. St. Rep. 880) ; *Preston* v. *Loughran,* 58 Hun (N. Y.), 210, 215 (12 N. Y. Supp. 313). His right to buy at a sale under an execution to which he was a stranger is even clearer: *Fiske* v. *Sarber,* 6 Watts & S. (Pa.) 18; *Allen* v. *Gillette,* 127 U. S. 589, 596 (32 L. Ed. 271, 8 Sup. Ct. Rep. 1331).

While a tenant in common will be charged as a trustee if he purchases an outstanding hostile title, the weight of authority entitles him to buy the moiety of his co-tenant at a public sale thereof under legal process running against the property of the cotenant: Free-man on Cotenancy and Partition (2 ed.), 165; *Baird* v. *Baird's Heirs,* 21 N. C. 524 (31 Am. Dec. 399); *Mc-Nutt* v. *Nuevo Land Co.,* 167 Cal. 459, 466, 467 (140 Pac. 6); *Starkweather* v. *Jenner,* 216 U. S. 524, 528 (54 L. Ed. 602, 30 Sup. Ct. Rep. 382).

6. Plaintiffs attack the sale on the ground of inade-quacy of price. It appears that Webster paid $2,400 for his interest in the lots in controversy. They were purchased during a boom, at a time when real estate sold readily. In 1896, when the defendants purchased at sheriff's sale, the boom had flattened out and prop-erty was unsalable except at prices which were a small fraction of former values. There is testimony that those who were not obliged to sell continued to value their property at the same prices as before the de-pression, but the adequacy of the price obtained at a judicial sale is to be tested by comparison with prices paid for like property at sales made at or about the same time. The property sold by the sheriff was sub-ject to the lien of the Rogers mortgage; on the day of sale the mortgage debt amounted to $603.58. The lots sold subject to this encumbrance for $40. A pre-vious execution against Webster had been returned *nulla bona;* counsel who controlled this execution tes-tified that he did not think the lots were worth the amount of the mortgage, and for this reason refrained from levying upon them. S. C. Rogers testified that he was willing to bid a larger sum than that for which the property was struck off and sold. This circum-stance cannot be permitted to defeat the sale; if the

rule were otherwise, sales at public auction would be a precarious source of title. Plaintiffs have produced a number of witnesses who appraise the property at the time of sale at sums largely in excess of the price paid and defendant offers evidence to show that Webster's equity of redemption had no value. The lower court found in accordance with this latter testimony that Webster's half interest in the property did not exceed $400 in value. It is sufficient for present purposes to say that the inadequacy of price, if any, was not gross. Plaintiffs are not entitled to relief on this ground: *Farmers' Loan Co.* v. *Oregon Pacific R. R. Co.,* 28 Or. 44, 69, 70 (40 Pac. 1089) ; *Nodine* v. *Richmond,* 48 Or. 527, 544 (87 Pac. 775). We do not intend to decide that after the confirmation of a sale it is competent for the defendant in the writ or his successor in interest to attack the sale on the ground of inadequacy of price. That the order of confirmation concludes this question is intimated in *Leinenweber* v. *Brown,* 24 Or. 548, 552 (34 Pac. 475, 38 Pac. 4).

7. The defense of laches asserted by the defendants is clearly made out. Plaintiffs and their predecessor in interest have paid no part of the taxes since the land was purchased in 1890. A street assessment of $1,008 was paid by S. C. Rogers. The plaintiff Walter H. Webster resided in Marshfield until 1898. He knew the condition of the real estate market and must have known that at the time of the sale his father had no beneficial interest in the property. No one could think that at that time his father's interest in the property was worth the amount of the liens with which it was encumbered. He stood by until these liens were outlawed and until nine years after S. C. Rogers had constructed a valuable building on the property.

The front of this building is situate on lots in which plaintiffs assert no interest. If they were to prevail in this suit they would be entitled to a half interest in the lots on which the rear portion of the building is constructed. The complaint was filed nineteen years after the sale. In the meantime the business section of Marshfield had shifted, the population had increased and the property had acquired a value it did not possess in 1896. In the ten years intervening between the sheriff's sale and the construction of the building, the possession of S. C. Rogers fell short of the requirements of the law of adverse possession, but he exercised dominion over the property from time to time. There were open and visible marks of this dominion, notice of which is chargeable to these plaintiffs and their ancestor. Within the principles of the law of laches as expounded by Mr. Justice WOLVERTON in *Raymond* v. *Flavel,* 27 Or. 219, 238 (40 Pac. 158), by Mr. Justice MOORE in *Loomis* v. *Rosenthal,* 34 Or. 585, 600–603 (57 Pac. 55), and as applied by Mr. Justice BEAN in *Crowley* v. *Grant,* 63 Or. 212, 221 (127 Pac. 28), plaintiffs' claim is stale and it would be most inequitable to adjudge them the owners of a half interest in this property. If the defense of equitable confirmation had been pleaded, the case would fall within the doctrine of *Mascall* v. *Murray,* 76 Or. 637, 651 (149 Pac. 517). Plaintiffs' right to litigate this controversy in a court of equity has not been challenged and this opinion must not be construed as adjudging that such right exists.

The decree of the lower court is affirmed.

AFFIRMED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BEAN concur.