HALL *v.* McReynolds *et al.*

(*Nashville*, December Term, 1940.)

Opinion filed July 1, 1944.

C. W. KEY, HORACE E. CATE, and JOHN M. KELLY, all of Knoxville, for complainant.

WHITE & LEONARD and J. W. ELMORE, JR., all of Knoxville, and GODDARD & GAMBLE, of Maryville, for defendant.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The question presented is whether a tenant in common can purchase at a foreclosure sale the interest of another tenant in common which has been mortgaged to the tenant in common who purchased the interest and holds it adversely to the maker of the mortgage.

*Certiorari* has been granted and the cause argued. The chancellor held that defendant McReynolds was not entitled to the relief sought under his cross-bill, and the foreclosure of the trust deed held by Hall and others was valid, and dismissed the cross-bill. The Court of Appeals affirmed the decree of the chancellor.

The defendant McReynolds owns several farms in Blount County, and the large farm in question was encumbered by a trust deed of $14,000 to the Bank of Maryville. McReynolds could not pay the interest on the loan nor his taxes, and the property was advertised and sold on November 4, 1936. In the spring of 1936 McReynolds had borrowed $1,000 from the complainant Hall and others to make a payment on this loan, which held off the foreclosure until fall. At the time this $1,000 was loaned by the complainants to McReynolds the latter was pasturing cattle for complainants for one-half of the net profit received for the cattle. The herd of cattle was sold after the foreclosure, and the note for $1,000 was surrendered to McReynolds as his one-half of the profit received from the cattle.

When the property was about to be sold in the fall of 1936 McReynolds tried to raise money from complainants and others to prevent a foreclosure. On November 10, 1936, the complainants purchased this farm of about 400 acres from the Bank of Maryville for $17,500 at the foreclosure sale. On November 12, 1936, a one-half interest in this farm was conveyed to McReynolds by the complainants for $8,750. McReynolds did not pay any cash, but complainants took his note secured by a trust deed on the one-half interest in the land for the full amount of the purchase price of his one-half interest.

Later, McReynolds and the complainants entered into a partnership arrangement in operating the farm, and continued to so operate it until late in the fall of 1941. The complainants placed the supervision of the farming operations under B. C. Knight, a son of one of the complainants and an employee of Knox County. There was no agreement to pay Knight anything for his work. McReynolds and Knight worked together in operating the farm. McReynolds did considerable work personally on the place. Practically all the profits on the farm were put back in improvements and payment of taxes.

None of the principal or interest was paid on the note which McReynolds had given his cotenants as payment for his one-half interest. The trustee under the mortgage, at the request of the holders of the note, advertised the farm for sale and sold McReynold's one-half interest at foreclosure on June 21, 1941. The complainants purchased the property at the foreclosure sale for $8,750, the principal amount of the indebtedness. The foreclosure notice was duly advertised according to the terms of the trust deed, but no copy of the foreclosure notice was given or mailed to McReynolds. The latter did not learn of the foreclosure sale until December, 1941, or about

six months thereafter. McReynolds testifies that he had assumed there were sufficient profits on the farm to pay his interest on the indebtedness of $8,750 and complainants had so applied them.

The chancellor and the Court of Appeals held the foreclosure sale valid as to McReynolds because under the facts of the cause there was an exception to the general rule that tenants in common "cannot buy in the common property at a tax sale, or foreclosure sale, or buy in an outstanding title or other overhead claim, except for the benefit of all," as held in *Perkins et al.* v. *Johnson*, 178 Tenn., 498, 500, 501, 160 S. W. (2d), 400, 401. The lower courts held that this rule is not absolute and may be qualified by circumstances surrounding the particular case. It was further held by the lower courts that when one tenant in common mortgages his interest in common property to another tenant in common their interest, in so far as the mortgage is concerned, becomes somewhat antagonistic or hostile; that under the circumstances the confidential relation existing between these parties is somewhat destroyed. The lower courts also held that so long as the advertisement and sale are legal and the property brings a fair price, a court of equity will not disturb the sale.

The Court of Appeals in its opinion states that it has not been able to find a decision based on facts comparable to those in the instant cause.

The record discloses that McReynolds bought the farm in question in 1923 for $37,000; that when the depression came he borrowed $14,000 from the Bank of Maryville; that the Bank foreclosed the mortgage in November, 1936, and he was given a few days to redeem it; that the deed was made to Hall and Knight, and they in turn conveyed a one-half undivided interest to McReynolds and took a

mortgage back upon the same interest to secure the purchase price; that at the same time an oral agreement was entered into between all of the parties to operate the business of farming on said tract of land as a partnership undertaking with the parties sharing profits, losses and expenses in the same proportion as their interest in the land.

The three owners—that is, Hall and Knight together owning a one-half interest and McReynolds owning the other interests—continued to operate the farm as a partnership project from November, 1936, to June, 1941, when the mortgage on the one-half interest of McReynolds was foreclosed, and Hall and Knight continued to operate the farm in the same way with some of McReynold's farm tools and stock until December, 1941. There is no fraud shown in the foreclosure otherwise.

In *Perkins et al.* v. *Johnson, supra,* 178 Tenn., at pages 500, 501, 160 S. W. (2d), at page 401, the Court said: "The general rule is that tenants in common 'cannot buy in the common property at a tax sale, or foreclosure sale, or buy in an outstanding title or other overhead claim, except for the benefit of all. This is the doctrine of *Tisdale* v. *Tisdale*, 34 Tenn. (2 Sneed), 596, 64 Am. Dec., 775; *Williams* v. *Gideon*, 54 Tenn. (7 Heisk.), 617; *Sharp* v. *Williams*, 1 Shannon Cas., 76; *Saunders* v. *Woolman & Co.*, 75 Tenn. (7 Lea), 300; *Harrison* v. *Winston*, 2 Tenn. Ch., 544; *Watson* v. *Ryan*, 3 Tenn. Ch., 40.' *Davis* v. *Solari*, 132 Tenn., 225, 177 S. W., 939.''

The reason for this rule is that being associated in interest as tenants in common by a purchase at a tax sale or by descent, an implied obligation exists to sustain the common interest. This reciprocal obligation will be vindicated and enforced in a court of equity as a trust.

However, in this cause, when Hall and Knight conveyed to McReynolds a one-half undivided interest in this farm and then took back from McReynolds a trust deed on his one-half undivided interest, that was an independent transaction and the doctrine approved in *Perkins et al.* v. *Johnson, supra*, does not apply, but the relationship between Hall and Knight as mortgagees and McReynolds as mortgagor, became antagonistic.

In *Webster* v. *Rogers*, 87 Or., 547, 171 P., 197, it appeared that one cotenant mortgaged his interest to the other, and the mortgagee purchased at the foreclosure sale. The Court said at pages 199, 200 of 171 P.:

"It is suggested that Rogers as the tenant in common of Webster was disqualified from purchasing. By mortgaging his interest in the property to Rogers, Webster consented that Rogers might buy at a foreclosure sale. . . .

"His right to buy at a sale under an execution to which he was a stranger is even clearer. . . . While a tenant in common will be charged as a trustee if he purchases an outstanding hostile title, the weight of authority entitles him to buy the moiety of his cotenant at a public sale thereof under legal process running against the property of the cotenant." See also *McNutt* v. *Nuevo-Land Co.*, 167 Cal., 459, 140 P., 6.

In *Hodgson* v. *Federal Oil & Development Co.*, 274 U. S., 15, 19, 47 S. Ct., 502, 503, 71 L. Ed., 901, 905, 54 A. L. R., 869, the Court said: ". . . The rule as commonly stated forbids a cotenant from acquiring and asserting an adverse title against his companions because of the mutual trust and confidence supposed to exist; but the rule does not go beyond the reason which supports it. If the interests of the cotenants accrue at different times, under different instruments, and neither has superior

means of information respecting the state of the title, then either, unless he employs his cotenancy to secure an advantage, may acquire and assert a superior outstanding title, especially where there is no joint possession.''

■■ We recognize the above principle of law; that is, where one tenant in common buys in the property at a tax sale, or foreclosure, or under like circumstances, he will be deemed to hold the property as trustee for his cotenants, as was held in *Perkins et al.* v. *Johnson, supra.* It is likewise true that a tenant in common may mortgage his undivided interest to another tenant in common, and the mortgagee tenant in common is permitted to buy the property for his sole benefit at the sale. *Webster* v. *Rogers, supra.* No relation of trust in such case arises.

■ The complainants Hall and Knight owed no obligation to McReynolds other than that which ordinarily exists between a mortgagee and mortgagor. As before stated, there is no proof showing fraud on the part of Hall and Knight. The mortgage was foreclosed as provided by its terms, and the mortgagees were under no obligation to give personal notice to McReynolds.

It results that the decree of the Court of Appeals will be affirmed.