**Paul M. WATSON and wife Ruth Watson**

v.

**UNITED AMERICAN BANK IN KNOXVILLE.**

Court of Appeals of Tennessee, Eastern Section.

July 26, 1979.

Certiorari Denied by Supreme Court Oct. 22, 1979.

W. F. Shumate, Jr., Knoxville, for defendant-appellant.

Thomas Privette, Jr., Ivan T. Privette, Knoxville, for plaintiffs-appellees.

## OPINION

GODDARD, Judge.

United American Bank in Knoxville, Defendant-Appellant, appeals a judgment of the Chancery Court for Knox County which determined that it had purchased a deed of trust note in a fiduciary capacity and that Paul M. Watson and wife Ruth Watson, Plaintiffs-Appellees, its co-tenants in common, were to be decreed a one-half interest in the real estate securing the note upon their paying some $24,000, being one-half of the purchase price. The Defendant insists that the Court was in error in finding that it occupied a fiduciary relationship with the Plaintiffs. The Plaintiffs purport to prosecute a protective appeal, insisting that if this Court sustains the Defendant's assignments of error that it is entitled to the alternative relief sought, which was to have a foreclosure sale held pursuant to the terms of the trust deed securing the note set aside and the property resold after notice to all parties.

The facts, which for the most part are stipulated, are succinctly set out in Appellees' brief as follows:

By Deed dated April 2, 1973, Robert L. Huber, Trustee, (herein called Huber) conveyed to David L. Alley (herein called Alley) a valuable tract of land located at the North end of Knox Lane in the 33rd Ward of the City of Knoxville, for a total purchase price of approximately $94,-000.00, receiving approximately $22,-000.00 in cash, and a purchase money note for approximately $72,000.00, Alley tak-

ing title to a one-half undivided interest individually and to a one-half interest as Trustee. Alley executed a Trust Deed dated April 11, 1973, covering the property in question and securing the payment of said purchase money note for approximately $72,000.00 (herein referred to as Alley-Huber Trust Deed). Alley subsequently acquired by a series of conveyances the title to the other one-half interest in his individual name and became the owner individually of all of said property.

By Deed dated July 8, 1976, and pursuant to a contract dated June 30, 1976, Alley conveyed to Paul M. Watson and wife, Ruth Watson (herein called Watsons), a one-half interest in said property for which Watsons paid a total of $24,-000.00 consideration. This Deed did not mention the Alley-Huber Trust Deed, but the Watsons were aware of the Trust Deed and purchased said interest subject thereto.

Alley executed a Trust Deed dated December 17, 1976, to United American Bank securing his note for $50,000.00, payable to said Bank, payable on demand or if no demand, two years after date (herein called Alley-U.A.B. Trust Deed).

On May 24, 1977, United American Bank foreclosed the Alley-UAB Trust Deed and being the sole bidder, bid the property in for $20,000.00, taking a Trustee's Deed for the one-half interest covered by the Alley-UAB Trust Deed, said Trustee's Deed being dated June 2, 1977.

At this point, on June 2, 1977, United American Bank became a tenant in common, owning a one-half interest in the subject property, with Paul M. Watson and wife, Ruth Watson, who, as tenants by the entirety, owned the other one-half interest.

On June 6, 1977 (four days after United American Bank acquired the one-half interest by the foreclosure of the Alley-UAB Trust Deed), United American Bank, without notice to the Watsons, purchased the Note and Trust Deed from Alley to Huber, which then had an unpaid principal balance of approximately $48,-000.00. United American Bank then act-

ed immediately to commence foreclosure of the Alley-Huber Trust Deed by publishing notice of foreclosure for three times in *The Knoxville News-Sentinel* and by posting a copy of the notice at the front door of the Knox County Courthouse. It gave no notice of any kind to the Watsons and did no special advertising to obtain a purchaser for the property. Unknown to the Watsons, the foreclosure sale was held on July 11, 1977. The United American Bank, the sole bidder at the sale, bid the property in for $30,000.00. A Trustee's Deed was executed on July 20, 1977, conveying only a one-half interest in the property to United American Bank. A Correction Trustee's Deed dated May 16, 1978, was executed in favor of United American Bank as purchaser, said Correction Deed stating that it conveyed the remaining one-half interest in the subject property.

All instruments referred to hereinabove were recorded shortly after they were executed, with the exception of the last instrument, which was recorded on September 22, 1978. However, no question is involved in this suit with respect to recording deeds and their effect on any priority between the parties.

We turn now to the Defendant's assignments of error. Although there are four in number all except the last, which complains of the taxing of costs, in reality present one question: Did the Trial Court err in finding a fiduciary relationship?

*Tisdale v. Tisdale,* 34 Tenn. 595, 598 (1855), the leading case on the subject, laid down the general rule that one tenant in common cannot buy in common property at a tax or foreclosure sale or buy in an outstanding title or other claim except for the benefit of all. In *Tisdale,* the parties acquired the interest in the property by descent and the Court was careful to point out, albeit by *dictum,* that the rule is not necessarily applicable in cases where title was acquired at different times, even though from the same source:

He was jointly interested in the land with the complainants, as tenant in common by descent. As such, he will be regarded as acting for all in the removal of an encumbrance, or perfecting the title, unless the contrary is clearly made to appear. White & Tudor Ld.Cas. 56. Tenants in common by descent are placed in a confidential relation to each other, by operation of law, as to the joint property, and the same duties are imposed as if a joint trust were created by contract between them, or the act of a third party. It may be different where they claim title by distinct purchases, even of the same original title, but that is not the case before us. Being, then, interested with and for each other in the property, each one is prohibited from acquiring rights in it antagonistic to the others. 1 White & Tudor, 53. Being associated in interest as tenants in common by descent, an implied obligation exists to sustain the common interest. This reciprocal obligation will be vindicated and enforced in a court of equity, as a trust. These relations of trust and confidence bind all to put forth their best exertions, and to embrace every opportunity to protect and secure the common interest, and forbid the assumption of a hostile attitude by either; and, therefore, the purchase by one of an outstanding title, or an encumbrance upon the joint estate, in his own name, will enure to the equal benefit of all, but they will be compelled to contribute their respective ratios of the consideration actually given. 6 Dana, 171, 176, and 5 Johns.Ch. 388, where Chancellor Kent, in the case of *Vanhorn v. Fonda*, lays down the doctrine ably and correctly: "The condition of equal contribution to the expense of the purchaser has been complied with in the case before us, by the application of the proceeds of the sales of the common property. If this had not been so, and the money not brought into court, the same would be raised out of the land by sale."

There may be cases where one tenant in common may purchase in an outstanding title for his own benefit, but this is not one of them, nor is this a case of that kind; but it is one where an encumbrance of a mortgage was removed. In such a case we are aware of no exception to the application of the rule stated.

In *Sharp v. Williams*, 1 Tenn.Cas. 76 (Shannon, 1858), a case decided three years after *Tisdale*, the Court, also by *dictum*, suggests that the rule should apply even when the property is acquired by the co-tenants from different sources.

In the next case which gives the question any particular attention, *King v. Rowan*, 57 Tenn. 675, 682 (1873), the Court appears to retreat to the position of *Tisdale*:

We proceed to examine the second question. It was presented in the case of *Tisdale v. Tisdale et als.*, 2 Sneed, 598–9, as to tenants in common by descent. In the opinion of Judge Wright, he says of the purchasing tenant in that case: "He was jointly interested in the land with complainant as tenants in common by descent, as such he will be regarded as acting for all in the removal of incumbrances, or perfecting the title, unless the contrary is clearly made to appear." He lays down the general rule as broadly as the authorities will warrant in cases of tenants in common by descent. He adds, however, that "It may be different where they claim title by distinct purchases, even if the same original title." 599. He then adds, on page 600, there may be exceptions, or to use his language, "There may be cases where one tenant in common may purchase in an outstanding title for his own benefit, but this is not one of them." The rule is laid down by Chancellor Kent, in *Home v. Fender*, 5 J.C.R. 388 and 407, in the same guarded and qualified terms as given by Judge Wright, where the Chancellor says, "I will not say, that one tenant in common, may not, in any case purchase in an outstanding title for his exclusive benefit," but lays down the rule strongly against the right to do it. In case of two devisees in possession under an imperfect title from their common ancestor, he says, it would be immoral and inequitable to allow it in

such case, and so it is said L.C. in Eq., 95, that one co-tenant shall not sweep away the title of the others, unless some special circumstances occur in the case. These authorities, while laying down the rule, to which we assent, sufficiently indicate, and in fact clearly recognize it as subject to qualifications and exceptions; one of which is, where the opposite of a trust is made clearly to appear; the other, *where the parties hold by purchase different titles*, even though from a common source, or where special circumstances occur in the case. (Emphasis supplied.)

In a still later case, *Gass v. Waterhouse*, Tenn.Ch.App., 61 S.W. 450, 453 (1900), the Court suggests that the application of the rule should not be dependent upon the manner of acquisition, but rather on the relationship of the parties:

The general rule unquestionably is that the purchase of an outstanding title or claim by one tenant in common must and does inure to the benefit of all, and that all are entitled to the benefits and protection of the outstanding title so purchased. It is also true that there are exceptions to this rule. Counsel for the complainant insist that such is not the result if the parties hold by different purchases, and counsel cite and rely upon the cases of *King v. Rowan*, 10 Heisk. 683; *Tisdale v. Tisdale*, 2 Sneed, 598; *Burns v. Headerick*, 85 Tenn. 103, 2 S.W. 259. The cases cited and relied upon do recognize an exception to the general rule, but they do not hold that the simple fact of purchases at different times so changes the relations and duties of tenants in common as to absolve them from their trust relations to each other, and as to always constitute an exception to the rule above mentioned. But these cases are simply based upon the principle that the tenants in common may at times occupy such distinct and adverse relations, well known to each other, as to abrogate all trust obligations, and that, where such adverse attitudes are known

and recognized, one tenant in common may purchase for his own benefit an outstanding title in such a way as that the same will not inure to the benefit of the other tenants in common, and as that the implication will not at least arise that the purchase was so made. It appears clearly that these parties were tenants in common at the time of these purchases made by Gass. As we say, they had before that a joint and common possession through a tenant. There was nothing to indicate or give notice of any adverse interest. It appears from this proof that the complainant, Gass, at least to a part of the land, was acting as agent for the other tenants in common, that he did lease out or grant rights to cut tan bark upon this land, and we are satisfied that the agreement was that he was to look after taxes in Bledsoe county. Such being the case, he occupied a trust position and attitude towards the other tenants in common, and it presents an ideal case for the enforcement of the rule that the purchase by one tenant in common inures to the benefit of all, and we are therefore of the opinion that there is no error in the decree of the chancellor upon this point, and that the same should be affirmed, and we so hold also as to the title purchased.

■ In attempting to resolve and harmonize the foregoing opinions we have reviewed a number of cases which discuss the rule. Some of these cases involve property which was commonly acquired,[1] and others property which was not.[2] None of these, however, attempts to speak to the specific problem raised in this case and addressed in the four cases which we have discussed individually. However, we have had the benefit of the annotation found in 54 A.L.R. at page 874, which suggests that by the weight of authority the rule is only applicable where the co-tenants derive title by descent, devise or a single conveyance from a common grantor. While this would un-

---

1. *Perkins v. Johnson*, 178 Tenn. 498, 160 S.W.2d 400 (1942); *Gentry v. Gentry*, 33 Tenn. 87 (1853); *State v. Allen*, 27 Tenn.App. 357, 181 S.W.2d 375 (1943).

2. *Moore v. Cole*, 200 Tenn. 43, 289 S.W.2d 695 (1956); *Woods v. Richardson*, 190 Tenn. 662, 231 S.W.2d 340 (1950); *Hall v. McReynolds*, 181 Tenn. 515, 181 S.W.2d 761 (1944).

doubtedly offer a clear and unambiguous test, we do not believe in light of *Gass* that we can conscientiously adopt it as the rule for this State. Instead, we believe that the Tennessee rule, as gleaned from all of the authorities which we have examined, is as follows: When property is held by tenants in common, having been acquired at the same time from a single source, the parties are bound by a fiduciary relationship and when property is otherwise acquired such a relationship does not arise absent, in both cases, proof which would compel a contrary result.

Applying the rule above enunciated to the facts of the present case, it follows that because the property was acquired at different times from different sources, and because there was no proof showing any relationship of trust or confidence, the Trial Court erred in finding that the parties occupied a fiduciary relationship. Therefore, the assignments of error directed thereto are sustained.

This brings us to the assignment of error filed by the Plaintiffs. In their protective appeal, as previously noted, the Plaintiffs' alternative theory of relief seeks to set aside the sale because of the grossly inadequate price.

█ At the outset, the Defendant moves to dismiss this appeal because no appeal was prayed or granted and the appeal taken by the Defendant was not broad but a limited one which would not accommodate error assigned by the Plaintiffs.

While we are inclined to agree with the Defendant's position, we note that the Plaintiffs are entitled to a writ of error as a matter of right, and we shall treat their appeal as if being here upon writ of error.

█ The general rule regarding setting aside a foreclosure sale is found in the case of *Pugh v. Richmond*, 58 Tenn.App. 62, 77, 425 S.W.2d 789, 796 (1967), which quoted with approval from an earlier case of *Mitchell v. Sherrell*, 11 Tenn.App. 210 (1929), as follows:

"The general rule is that mere inadequacy of price does not in itself invalidate or affect the sale, otherwise properly conducted, unless it is so great as to shock the conscience of the court; and a court will be particularly inclined to set the sale aside when in addition to inadequacy of price other circumstances exist rendering it inequitable for the sale to stand."

\* \* \* \* \* \*

"Because sales by mortgagees under powers are much liable to abuse, they are most jealously watched by courts of equity, and upon slight proof of unfair conduct they will be set aside."

Although the Chancellor was not required to rule on the question presented by this assignment of error, he did express his opinion that the purchase price was not so inadequate as to shock his conscience. Perhaps our conscience, at least in this area of concern, is more delicate than that of the Chancellor. In any event, we are of the opinion that a sale price of $30,000 for a tract of land which, under the most conservative appraisal in the record, was worth $90,000, does demonstrate such an inadequacy. Moreover, even if we were to assume the inadequacy was not so great as to shock the conscience of the Court, we think it is sufficiently great—when coupled with the failure of the Defendant to give notice to the Plaintiffs of the impending sale [3] so that they might protect their interest—to render it "inequitable for the sale to stand."

The assignment of error of the Plaintiffs is accordingly sustained and the cause remanded for further proceedings not inconsistent with this opinion. The costs of appeal are adjudged one-half against the Plaintiffs and one-half against the Defendant and its sureties.

PARROTT, P. J. (E.S.), and FRANKS, J., concur.

---

**3.** In reaching this conclusion we are aware that inadequacy of consideration standing alone is insufficient to set aside a sale, *Mitchell v. Sherrell*, supra, and that the trust deed which was foreclosed did not require actual notice.